**David R. HODGE, et al.**

v.

**CARROLL COUNTY DEPARTMENT OF SOCIAL SERVICES, et al.**

Civ. No. HM–92–155.

United States District Court,
D. Maryland.

Sept. 21, 1992.

Tracy E. Mulligan, Rockville, MD, Edwin Vieira, Jr., Independent Hill, VA, for plaintiffs.

Donna R. Heller, Shelly E. Mintz, Baltimore, MD, for defendants.

## MEMORANDUM

HERBERT F. MURRAY, Senior District Judge.

The plaintiffs, David and Marsha Hodge, individually and on behalf of their son, Joseph Hodge, have filed this § 1983 action against the defendants, the Carroll County Department of Social Services ("CCDSS"), M. Alexander Jones, Director of CCDSS, Alan Katz, Assistant Director of CCDSS, and Carolyn Colvin, Director of the Maryland Department of Human Relations ("MDHR"), with respect to an investigation by CCDSS into a report of suspected child abuse. Pending before this Court are the motion of the defendants to dismiss or in the alternative for summary judgment and the motion of the plaintiffs for interlocutory summary judgment. For the reasons stated below, this Court will grant the defendants' motion in part and deny that

motion in part, and grant the plaintiffs' motion.

## I. MOTION TO DISMISS

The defendants raise three arguments in support of their motion to dismiss: first, that the plaintiffs have failed to state a claim for relief under 42 U.S.C. § 1983; second, that the defendants enjoy absolute immunity from suit under the Eleventh Amendment to the United States Constitution; and third, that the individual defendants enjoy qualified immunity in this case. This Court will consider each of those arguments, although in a slightly different order.

### A. *Eleventh Amendment Immunity*

■ The Eleventh Amendment provides the States and their agents with absolute immunity from suit in the federal courts. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). When considering whether that immunity precludes federal claims against a particular local entity, courts must examine the essential nature of that entity under state law. *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977).

■ The United States Court of Appeals for the Fourth Circuit already has examined Maryland's social services system in the context of Eleventh Amendment immunity, and has concluded that the county departments of social services are agencies of the State for Eleventh Amendment purposes. *Keller v. Prince George's County,* 923 F.2d 30, 32 (4th Cir.1991); *see also Williams v. Anderson,* 753 F.Supp. 1306, 1311 (D.Md.1990) (holding Kent County Department of Social Services immune from suit under the Eleventh Amendment). Accordingly, the Eleventh Amendment precludes this action against CCDSS.

■ To the extent that the plaintiffs seek monetary damages, the Eleventh Amendment also precludes claims in federal court against the individual defendants in their official capacities. *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355–56. However, an exception to immunity exists for federal claims for purely prospective equitable relief, even if such claims might have an ancillary effect on the State Treasury. *See Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979) (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Finally, absolute immunity under the Eleventh Amendment does not extend in any event to individual state officials sued in their individual capacities.

In this case, the plaintiffs have named Jones, Katz, and Colvin in both their official and individual capacities. Within the Eleventh Amendment framework outlined above, the plaintiffs may seek equitable relief against the individual defendants in their official capacities and monetary relief against those defendants in their individual capacities. Accordingly, this Court will not grant the defendants' motion to dismiss those claims based on Eleventh Amendment immunity.

### B. *Failure to State a Claim*

■ In further support of their motion to dismiss the complaint, the individual defendants argue that the plaintiffs have failed to state a claim upon which relief may be granted. Because the parties both have submitted matters outside the complaint, this Court will transform the defendants' motion to dismiss into one for summary judgment. Fed.R.Civ.P. 12(b).

■ Rule 56(c) of the Federal Rules of Civil Procedure permits a grant of summary judgment only if no genuine issues of material fact exist and the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden is on the moving party to demonstrate the absence of such issues of material fact. For the purposes of deciding the defendants' motion, this Court must construe all facts and reasonable inferences in favor of the plaintiffs. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Mindful of these well-established principles, this Court will proceed to

a reading of the complaint and evidence submitted in this case in connection with the defendants' motion.

On January 20, 1989, David and Marsha Hodge admitted their three-month-old son, Joseph, into Carroll County General Hospital for examination and treatment of swelling in Joseph's right arm. Diagnosing Joseph's condition as a broken right ulna "without adequate historical explanation," the doctor treating Joseph referred the case to CCDSS as a case of suspected child abuse. At the same time, the doctor informed the Hodges of his decision to report the case to CCDSS.

The next day, a social worker from CCDSS named Richard Loper began an investigation of the reported abuse. Accompanied by a Maryland State Trooper, Loper interviewed the Hodges and the doctor who reported the suspected abuse at the hospital. Loper also conducted interviews of other persons, including Phyllis A. Hodge, David's mother. Finding no evidence of abuse, Loper classified the case as "unsubstantiated" and "ruled out" and filed his report with the CCDSS.

At CCDSS, Loper's investigatory report was entered onto the Automated Master File ("AMF"), a comprehensive computerized data base that contains a record of every individual in Maryland who has received any kind of "service" from any of the local DSS offices. "Services" range from food stamps to, as in this case, "Child Protective Services" ("CPS"). From any computer terminal connected to the AMF, CCDSS employees and any other users can obtain information about any recipient of DSS services from any DSS computer terminal, *i.e.*, at the present time, any individual in Maryland using the AMF can learn that Joseph, son of David and Marsha Hodge, received CPS services in January 1989.[1] Using the case number listed on the AMF, a DSS worker also can obtain the Hodge's case file, which contains a copy of all of the documents generated in the case.[2]

Unsatisfied with the initial diagnosis of a fractured arm, the Hodges took Joseph to another doctor. Discovering no broken bones at all, the second doctor diagnosed the swelling condition as osteomyelitis, a bacterial bone infection, and successfully treated Joseph for that ailment. On January 27, 1992, Martha Hodge notified Loper about the second diagnosis and treatment and pointed out that child abuse could not possibly have caused the problem with Joseph's arm.

Confident that the diagnosis of osteomyelitis had ended any suspicion that they had abused their son, the Hodges requested in February 1989 that CCDSS permit them to inspect their case file to ensure that it completely and accurately noted the disposition of the case. Instead of the file, however, the Hodges received a brief summary of the contents of the case file prepared by Katz. Later, Katz acknowledged that the Hodges' names were entered on the AMF.

Skeptical of Katz' version of their case file and concerned over the implications of their inclusion on the AMF, the Hodges turned to Carolyn Colvin, Director of the Maryland Department of Human Resources ("MDHR"). Referring to the State confidentiality statute, Md.Code art. 88A, § 6, and its supporting regulations, COMAR 07.01.02, 07.02.07, Colvin also refused to disclose the contents of the case file to the Hodges.

**The "AMF" and the "Central Registry"**

At the direction of the Maryland Legislature, the State Department of Welfare, the predecessor to the Social Services Administration ("SSA") within MDHR, created the

---

1. All of the information on the computerized data base is in alphanumeric code. However, any legitimate user of the AMF would understand the meanings of those codes, and there is nothing in this record to indicate that an illegitimate user who could obtain unauthorized access to the AMF could not similarly obtain access to those codes. Therefore, the fact that the information on the AMF is in code is irrelevant.

2. Because of the interrelation of the computerized data base and the physical case files, this Court hereafter will use the term "AMF" inclusively to describe both forms of information storage and retrieval in their entirety.

Central Registry for Child Abuse in 1966. Providing that "[MDHR] *shall* maintain a central registry of cases" of suspected child abuse, 1966 Md.Laws 469 (emphasis added), the Legislature noted its intent "to facilitate compliance with and enforcement of [the law] regarding the assaulting of children within the State." *Id.* at 466. The Legislature later provided for certain procedural safeguards in connection with the central registry, such as notice and an opportunity to be heard for any person named as a suspected child abuser. 1977 Md. Laws 2351–52.

In 1987, the Maryland Legislature consolidated its child abuse laws into Md.Fam. Law Code §§ 5–701 to 5–715. As part of that effort, the Legislature approved a measure proposed by MDHR to make the central registry requirement permissive rather than mandatory. *See* Md.Fam.Law Code § 5–714. Soon afterward, MDHR stopped adding records to the Central Registry for Child Abuse.

Meanwhile, however, in 1981 MDHR established the AMF, which, as noted above, is a comprehensive computerized data base that includes everyone in Maryland who has received "services" of any kind from any of the local DSS offices, including all children who receive CPS services. In a typical record of CPS services on the AMF, alphanumeric codes identify the names of child in the case, the child's parents or guardians, other members of the family, and still other persons associated with the family if those persons are child abusers or perpetrators of child abuse. Affidavit of Charles Bosley, ¶ 12.[3] Although thousands of individuals are listed on the AMF as "case associates" in connection with cases of CPS services, MDHR does not provide notice and an opportunity to be heard to any of those individuals.

In their complaint in this case, the Hodges assert that the individual defendants have knowingly and willfully denied the Hodges their basic rights of procedural due process in connection with the creation and maintenance of their case file on the AMF. Specifically, as individuals alleged to be child abusers in a case in which child abuse has been ruled out or otherwise found to be without any evidentiary basis, the Hodges assert the following "procedural due process rights":

(a) to have complete access to, and the ability to copy or otherwise make an independent record of, all information contained in the [AMF] that relates to them, so as to have timely and adequate notice of the charges against them and the evidence claimed to support those charges;

(b) to have included in the [AMF], as an official part of the case-file, written information supplied by them or by their agents relevant to the incidents of alleged child abuse, so as to have timely and adequate opportunity to present evidence in defense;

(c) to require that the CCDSS and the MDHR and their officials and employees, on the application of the Hodges, promptly correct or amend all misinformation contained in the [AMF], immediately reporting such corrections or amendations to the Hodges, or explaining in detail the agencies' refusal to make the requested corrections or amendments;

(d) to require that the CCDSS, the MDHR, or both provide the Hodges with the opportunity, in a prompt administrative hearing, to challenge any findings, reports, or other conclusory statements of "abuse," and the refusal of the CCDSS or the MDHR to correct or amend misinformation, contained in the [AMF];

(e) to require that the CCDSS and the MDHR inform the Hodges of each request by any agency of local, state, or national government, or by any private party, that may result in the release thereto of any information contained in the [AMF], with

---

**3.** At a hearing held on September 3, 1992, this Court denied the motion of the defendants to strike Bosley's affidavit. Rather than submit their own affidavits to counter Bosley's recollec-

tion concerning the AMF, the defendants have allowed the plaintiffs to configure the record in this case. *See Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991).

(i) a complete identification of the agency or party requesting the information;

(ii) specification of the information to be released; and

(iii) reference to the basis in statute or regulation for the release of such information to that agency or party, all of the foregoing to be provided a reasonable time before any such release may be made;

(f) to require that the CCDSS and the MDHR in no event release any information whatsoever contained in the [AMF] without including in the release materials a prominent certification that the alleged child abuse has been "RULED OUT," or otherwise found to be without legal or evidentiary basis;

(g) to require that CCDSS and the MDHR provide the Hodges with complete, accurate, and legible copies of all information contained in the [AMF] that has been released to anyone, immediately upon such release; and

(h) in as much as in the case of David R. Hodge and Martha A. Hodge the evidence adduced by the investigation provided no basis whatsoever for reasonable suspicion of child abuse, to require that the CCDSS and the MDHR forthwith expunge

(i) the names of David R. Hodge, Martha A. Hodge, and Joseph E. Hodge from any "central registry," "AMF," or functionally equivalent system of data-storage and data-retrieval;

(ii) any and all records, documents, entries, data, or other written or otherwise recorded information and materials that refer in any way either to David R. Hodge and Marsha A. Hodge, whether as "alleged child abusers" as such or by any similar term, classification, description, or rubric; or to Joseph E. Hodge as a "victim of child abuse" as such or by any similar term, classification, description, or rubric; or to David R. Hodge, Marsha A. Hodge, or Joseph E. Hodge as recipients from the CCDSS of "services" as such or by any similar term, classification, description, or rubric; and

(iii) any and all records, documents, entries, data, or other written or otherwise recorded information and materials that refer in any way to the alleged incident of child abuse involving Joseph E. Hodge.

Complaint, ¶ 51 (emphasis in original). The plaintiffs argue that these procedural due process rights exist in conjunction with their protected liberty and property interests in familial privacy, professional reputation, and the procedures established by Maryland law. Before reaching those interests, however, this Court will pause to review the applicable legal standards in this case.

### 42 U.S.C. § 1983

■ Section 1983 provides for the imposition of liability on any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or the laws of the United States. To state a claim under § 1983, the plaintiffs must show both (1) that the offending conduct was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiffs of rights secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The parties in this case agree that the individual defendants at all times acted "under color of state law."

■ Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979)). In particular combination with the Due Process Clause of the Fourteenth Amendment, § 1983 allows plaintiffs to assert three kinds of federal claims: (1) claims for the deprivation by state officials of any of the specific protections defined in the Bill of Rights; (2) claims under the

substantive component of the Due Process Clause relating to certain arbitrary wrongful government action; and (3) claims under the procedural component of the Due Process Clause relating to deprivations of life, liberty, or property without due process of law. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). Here, ¶ 51 of the complaint clearly sets out claims of the third variety listed above. In such a case, the first inquiry is whether the defendants deprived the plaintiffs of a protected liberty or property interest; if so, this Court must determine whether the process afforded to the plaintiffs conformed to the constitutional minimum under circumstances. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

### Familial Privacy

■ As one of the fundamental concepts in the Constitution, the term "liberty" broadly encompasses interests more far-reaching than mere freedom from bodily restraint. *Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972) (citing *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042 (1923)). Nevertheless, the term does not extend limitlessly to every conceivable individual interest that might impinge on one's pursuit of happiness in a free society, *Roth,* 408 U.S. at 569–70, 92 S.Ct. at 2705, but instead derives meaning from "existing rules or understandings that stem from an independent source such as state law." *Id.* at 577, 92 S.Ct. at 2709; *see also Paul v. Davis,* 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976).

For many years, courts have recognized that the Due Process Clause encompasses a broad right of personal privacy. *Whalen v. Roe,* 429 U.S. 589, 598–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1976) (recognizing an "individual interest in avoiding disclosure of personal matters," and an "interest in independence in making certain kinds of important decisions"); *Fadjo v. Coon,* 633 F.2d 1172, 1175 (5th Cir.1981) (privacy interest extends to information gathered during criminal investigation); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3rd Cir.1980) (privacy interest extends to medical records). Further, courts have acknowledged that such a right embraces interests in familial privacy. *See, e.g., Smith v. Organization of Foster Families for Equality and Reform,* 431 U.S. 816, 842, 97 S.Ct. 2094, 2108, 53 L.Ed.2d 14 (1977) (due process clause protects 'private realm of family life which the state cannot enter' (quoting *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944))); *Bohn v. County of Dakota,* 772 F.2d 1433, 1435–36 (8th Cir.1985) (familial privacy in context of parent identified as suspected child abuser).

■ Analogizing to the protected liberty interest in personal privacy acknowledged by the Supreme Court, the protected liberty interest in familial privacy encompasses an "interest in avoiding disclosure of personal matters." *Whalen,* 429 U.S. at 599, 97 S.Ct. at 876. That interest, also described as a "right to confidentiality," *Fadjo,* 633 F.2d at 1175 (quoting *Plante v. Gonzalez,* 575 F.2d 1119, 1132 (5th Cir. 1978)), is implicated when government shares private information or when government collects private information in the absence of any legitimate state interest for such collection. *Fadjo,* 633 F.2d at 1175.

After an investigation found "substantial evidence" of child abuse, the plaintiffs in *Bohn* filed suit under § 1983 claiming a deprivation of their rights to familial privacy. On the issue of whether the parents sufficiently had asserted a protected liberty interest in familial privacy to survive a motion to dismiss, the United States Court of Appeals for the Eighth Circuit wrote:

> The privacy and autonomy of familial relationships involved in a case like this are unarguably among the protectible interests which due process protects. We can conceive of no more important relationship, no more basic bond in American society, than the tie between parent and child.

*Bohn,* 772 F.2d at 1435–36. Echoing those sentiments, this Court holds that the Hodg-

es collectively enjoy a protected liberty interest in familial privacy.

The question that confronts this Court, however, is whether the actions of the individual defendants have deprived the Hodges of that protected interest without due process of law. The Hodges concede that CCDSS must investigate reported incidents of suspected child abuse; such an investigation necessarily involves some contact with individuals other than the Hodges themselves, including neighbors and members of the Hodges' extended family. The Hodges further concede that CCDSS must maintain records of child abuse investigations to the extent necessary to further the compelling governmental interest in protecting children from pedophiles and other abusers. Thus, the deprivation of familial privacy alleged by the Hodges in this case resulted only when the individual defendants maintained the Hodges' case file as part of the AMF even after any reasonable suspicion of child abuse had been ruled out.

This Court must utilize the three-part test announced by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), where the Court explained that

identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903. As noted above, the very substantial interest in familial privacy extends to the collection by the government of information that relates to child abuse. Further, because CCDSS includes on the AMF even those records of CPS services where child abuse has been ruled out, the deprivation of that interest in a case such as the Hodges' is assured. Finally, this Court cannot imagine that much expense or inconvenience could result from a requirement that CCDSS expunge records of CPS services where child abuse is ruled out, rather than maintaining those records on the AMF; on the facts presently in the record, there is no evidence to indicate that such expungement would impose any burden at all on the defendants.

■■■ In the absence of additional or substitute safeguards, the Hodges' case file would remain on the AMF until January 1994.[4] Given the "[p]roliferation in the collection, recording, and dissemination of individualized information" and the "ability of governmental officials to put information technology to uses detrimental to individual privacy, ... facilitated by the spread of data banks and by the increasing storage in computers of sensitive information relating to the personal lives and activities of private citizens," *Westinghouse Elec. Corp.*, 638 F.2d at 576, keeping such information for such an extended period of time requires that the government have a legitimate interest in collecting that information. In this case, the defendants have failed to assert any legitimate governmental interest in maintaining the Hodges' case file on the AMF. As noted above, CCDSS has no use for the Hodges' case file as a tool for tracking children who are victims of repeated suspicious injuries, because Joseph Hodge suffered from a bone infection, not a suspicious injury. Further, efforts to prevent harassment or repeatedly false accusations do not require personal information regarding the *victims* of such attacks. Finally, although CCDSS certainly has a legitimate governmental interest in compiling statistical data relating to CPS servic-

---

**4.** In January 1989, Maryland law provided:
The local department shall expunge a report of suspected child abuse or neglect 5 years after the date of the report if:
(1) the investigation ... concludes that the report is unsubstantiated; and

(2) no further reports of abuse or neglect are received during the 5 years.
Md.Fam.Law Code § 5–707(b). The defendants interpreted § 5–707(b) to require them to maintain records of cases of suspected child abuse for 5 years.

es, such data need not contain any information specific to the Hodges.

■ The Hodges also allege that CCDSS has shared their case file with other agencies and even with members of the press, and they assert a right to control access to their case file. Complaint, ¶ 51(e)–(g). Although the plaintiffs' substantial interest in familial privacy favors such control, additional safeguards of the kind proposed by the Hodges would create huge administrative and fiscal burdens for the State, with only minimal benefit for the Hodges. This Court finds that the current safeguards, including criminal sanctions for the improper disclosure of confidential information, adequately limit access to the information. Finally, the overriding state interest in using the information on the AMF to further the governmental interest in protecting children tips the balance against parental oversight; CCDSS certainly may share properly maintained records with other agencies in order to further that interest.

For over three years, the defendants have maintained a CPS case file on the Hodges with no legitimate justification for doing so. Under the circumstances, and in light of the evidence in the record, this Court concludes that the Hodges have stated a claim under § 1983 for deprivation of their protected liberty interest in familial privacy without due process of law.

### Professional Reputation

The plaintiffs also assert that the defendants deprived them of their protected liberty interest in professional reputation by maintaining their case file on the AMF. In support of their motion, the individual defendants argue that their actions do not rise to the level of a constitutionally cognizable deprivation of the Hodge's professional reputation.

In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the plaintiff, who had been arrested for shoplifting, argued that the distribution of a flyer to local businesses that labelled him as an "active shoplifter" deprived him of liberty without due process of law. The Court in that case held that any state-inflicted injury to the plaintiff's reputation did not implicate the protections of the Due Process Clause because applicable state law did not guarantee present enjoyment of reputation. *Id.* at 711–12, 96 S.Ct. at 1165–66.

■ The adult Hodges argue that, because they hold national security clearances in connection with their jobs, and because those clearances regularly are subject to review without notice, and because allegations of child abuse certainly would have a negative impact on such a review, the actions of the defendants have harmed them in a tangible way. This Court disagrees. First, national security clearances themselves are not a form of property protected by Due Process Clause. *Jamil v. Secretary, Department of Defense*, 910 F.2d 1203, 1209 (4th Cir.1990) (citing *Department of Navy v. Egan*, 484 U.S. 518, 528, 108 S.Ct. 818, 824, 98 L.Ed.2d 918 (1988)). Second, the plaintiffs seek to transform an action for defamation under the common law into a federal claim under § 1983, a tactic that the Supreme Court expressly has disapproved. *Paul*, 424 U.S. at 712, 96 S.Ct. at 1166 ("petitioner's defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause").

Citing *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir.1990), the plaintiffs argue that the Fourth Circuit has recognized a protected interest under the Due Process Clause in one's reputation as a child abuser. *Id.* at 392–93 (citing *Bohn*, 772 F.2d 1436 n. 4). In that case, however, the Fourth Circuit determined that "[t]he issue need not be decided," *id.* at 393, and the *obiter dicta* in that court's opinion does not require this Court to disregard well-established Supreme Court precedent.

In this case, the adult Hodges have failed to show any tangible deprivation under Maryland law in connection with their reputations "because of what the government is doing to [them]." *Paul*, 424 U.S. at 708, 96 S.Ct. at 1164 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507,

510, 27 L.Ed.2d 515 (1971)). Accordingly, the Hodges have failed to state a claim under § 1983 based on any such deprivation.[5]

### Established State Procedure

The third protected liberty interest asserted by the Hodges in support of their complaint arises from Maryland's procedural guidelines for the entry of cases of suspected child abuse onto a central registry. Md.Fam.Law Code § 5–715. In support of their motion, the individual defendants argue first, that the AMF is *not* a central registry, and second, that violations of state law do not support actions under § 1983.

Applicable regulations define "central registry" as "a registry of all reported cases of suspected child abuse and neglect maintained in the Social Services Administration." COMAR 07.02.07.02B(1). Because the AMF is a comprehensive data base containing *all* of the cases handled by the local DSS offices, the AMF certainly includes the subset of "all reported cases of suspected child abuse." Indeed, such cases are distinguished on the AMF from other cases by alphanumeric codes, so that a person using the AMF readily can distinguish between records of CPS services and records of other kinds of services. Moreover, to the extent that one considers the contents of the physical case files as an integral part of the overall data base, records of CPS services become even more easily identifiable.

■ The individual defendants insist that the AMF is not a central registry because it is not a system designed solely to list the names of adjudicated child abusers, and because it does not identify any

person as a suspected child abuser. Given the plain language of COMAR 07.02.07.-02B(1), however, that argument apparently confuses the general term "central registry" with the specific Central Registry for Child Abuse. Clearly, any computerized data base that includes records of cases of suspected child abuse is a "central registry" under Maryland law. Of course, the Central Registry for Child Abuse is an example of a "central registry." Similarly, the AMF also is a "central registry."

Justifiably concerned about the civil rights implications of a central registry containing records of all reported cases of suspected child abuse, the Maryland Legislature established a set of procedural safeguards in 1977 to protect individuals suspected of child abuse:

> **(b) Notice of entry of name in central registry.**—Before the name of a person who is suspected of abuse or neglect is entered in the central registry, the person shall be given notice.
>
> **(c) Hearing to appeal entry of name in central registry required; exception.**—(1) Except as provided in paragraph (3) of this subsection, on request by a person suspected of abuse or neglect, the Department shall hold an administrative hearing for the purpose of allowing the person to appeal the entry of the person's name in the central registry.
>
> (2) The hearing shall be held in the county in which the person suspected of abuse or neglect resides.
>
> (3) The name of a person adjudicated a child abuser may be entered in the central registry without an opportunity for a hearing under this subsection.

---

**5.** Without commenting on the merits of a defamation claim, this Court notes that, upon unsealing the Hodges' CPS case file, it was discovered that between January 23, 1989, and January 21, 1992, the alphanumeric codes on the computerized data base component of the AMF described the Hodges' case as one of indicated sexual child abuse, meaning that the CCDSS investigation discovered "credible and specific evidence, which has not been satisfactorily refuted," showing either that "[s]exual abuse had occurred and was committed by a caretaker or household or family member," or that "[t]here

are physical or behavioral indications that a child has been sexually abused...." *see* COMAR 07.02.07.08B(1). There is no evidence yet in the record to indicate who changed the computer records to reflect the proper disposition of the Hodges' case, or why three years passed before such a change was made. In any event, the state of the information on the AMF relates more to a common law claim for defamation than a constitutional claim for deprivation of liberty and property without due process of law. This is *not* a defamation case.

**(d) Requirements for entry of name in central registry.**—The Department may not enter the name of a person in the central registry unless the person has:

(1) been adjudicated a child abuser;

(2) unsuccessfully appealed the entry of the person's name in the central registry under procedures established by the Department and this section; or

(3) failed to respond within 15 days to notice by the Department of the Department's intent to enter the person's name in the central registry.

Md.Fam.Law Code § 5–715. In this case, the individual defendants clearly failed to provide notice and a hearing to the Hodges before including their names on the AMF.

The defendants argue that if the AMF were a central registry, then § 5–715 would require notice and a hearing before adding each and every record to the AMF. Because the Legislature could not have intended the absurd result of notice and a hearing in cases of, *e.g.*, food stamp services, the defendants argue, the AMF cannot be a central registry. However, this Court finds even more absurd the notion that the defendants could avoid the clear requirements of § 5–715 simply by adding other sorts of records to a central registry. However, § 5–715 has nothing to do with any sort of record other than records of cases of suspected child abuse. The Legislature enacted § 5–715 as part of an Act devoted entirely to the problems of child abuse and neglect. 1977 Md.Laws 2942–55. Moreover, § 5–715 appears on the books as part of a subtitle of Maryland law relating exclusively to child abuse and neglect, within a title devoted to children. Finally, the definition of central registry in COMAR 07.02.07.02B(1) does not include any records other than records of cases of suspected child abuse. Consequently, this Court's holding should be understood to distinguish between those records on the AMF that concern cases of suspected child abuse and records of other forms of DSS services.

The defendants further argue that because the AMF does not identify any persons as "suspected child abusers," the AMF is not a central registry and § 5–715 does not apply. Under Maryland law, however, the AMF *is* a central registry. Additionally, with regard to the defendants' initial position, exactly the opposite conclusion follows from the facts presently in the record. CCDSS provides CPS services only in cases of suspected child abuse. *See* CO-MAR 07.02.07.03A. Further, applicable regulations define "child abuse" generally as physical injury or sexual molestation inflicted on a child either by a parent or by a guardian. COMAR 07.02.07.02B(3). Therefore, every record of CPS services on the AMF is a record of a case of suspected child abuse. Indeed, several of the documents in the Hodges' physical case file labelled "Report of Suspected Child Abuse" leave no doubt about the nature of Loper's investigation in this case. Finally, even in a record of "unsubstantiated" child abuse, it requires no great leap of faith to conclude that at least one of the parents or guardians listed in the record is suspected of child abuse, regardless of whether the record identifies them explicitly in that way, and the plaintiffs have submitted affidavits from several former DSS employees to support such a conclusion.

 With respect to the defendants' other argument, "it is well settled that violations of state law cannot provide the basis for a due process claim." *Weller v. Department of Social Services*, 901 F.2d 387, 392 (4th Cir.1990). However, where state officers deprive an individual of a protected liberty or property interest in accordance with established state procedures, one may attack those procedures as violative of the Due Process Clause. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court explained that where a state official's random and unauthorized actions result in a deprivation of a protected liberty or property interest, adequate postdeprivation remedies provided by the State would satisfy the requirements of due process,

even where the state official acted intentionally. *Hudson,* 468 U.S. at 533, 104 S.Ct. at 3203. In contrast, an "established state procedure" resulted in the deprivation at issue in *Logan,* and the Court in that case held that postdeprivation remedies would not suffice, and that the plaintiff could challenge the state procedure. *Logan,* 455 U.S. at 436, 102 S.Ct. at 1158 ("Logan is challenging not the Commission's error, but the 'established state procedure' that destroys his entitlement without according him proper procedural safeguards").

■ In the case at bar, the individual defendants deprived the plaintiffs of their protected interest in familial privacy by placing into the AMF a record of the Hodges' case in the absence of any legitimate state interest in maintaining such a record. That deprivation occurred pursuant to an established state procedure that refuses to recognize the AMF as a central registry or to accord to persons suspected of child abuse the procedural safeguards contained in § 5–715. The only postdeprivation remedy available to the plaintiffs comes in the form of expungement after their record has remained on the AMF for five years; in light of the nature of the deprivation, this Court finds such a remedy wholly inadequate. The procedures contained in § 5–715 have indisputable value in discovering and preventing unwarranted deprivations such as the one at issue in this case. Finally, although requiring notice and a hearing before placing a person's name on a central registry will lead to a significant fiscal and administrative burden on the State, "it is at least awkward to find that procedures the state, through its legislative body, has imposed upon itself would be unduly burdensome for the state." *Riccio v. County of Fairfax, Virginia,* 907 F.2d 1459, 1468 (4th Cir.1990). Accordingly, this Court holds that the plaintiffs have stated a claim under § 1983 based on the defendants' refusal to comply with the procedural requirements of § 5–715.

## Paragraph 51

Having discussed at some length the protected liberty and property interests involved in this case, this Court briefly will examine the plaintiffs' asserted "procedural due process rights" contained in the complaint at ¶ 51 and evaluate each of those in light of the foregoing analysis. Such an examination will help to clarify this Court's holdings by illustrating the contours of the protected liberty and property interests allegedly deprived by the defendants.

■ The first of the asserted rights reads:

> to have complete access to, and the ability to copy or otherwise make an independent record of, all information contained in the [AMF] that relates to [the Hodges], so as to have timely and adequate *notice* of the charges against them and the evidence claimed to support those charges;

Complaint, ¶ 51(a) (emphasis ·in original). Although § 5–715 provides for notice of the charges of child abuse, neither the plaintiffs' interest in familial privacy nor their challenge to the established state procedure of refusing to recognize the AMF as a central registry support the plaintiffs' asserted right of complete access to the information contained in the AMF.· Thus, except for notice as provided in § 5–715, this Court rejects the plaintiffs' first asserted right.

■ Next, the plaintiffs assert a right to have included in the [AMF], as an official part of the case-file, written information supplied by them or by their agents relevant to the incidents of alleged child abuse, so as to have timely and adequate opportunity to present *evidence in defense;*

Complaint ¶ 51(b) (emphasis in original). Although § 5–715 does not provide for an opportunity to present evidence, regulations promulgated by MDHR allow for the presentation of documentary evidence and oral argument at a hearing conducted under § 5–715. COMAR 07.02.02.07C. Except to the extent that the plaintiffs challenge the established state procedure of refusing to comply with § 5–715 in connection with the AMF, however, nothing about the plaintiffs' interest in familial privacy or

their procedural challenge would support a right to add written material to their CPS case file at any other time.

The plaintiffs also assert a right

to require that the CCDSS and the MDHR and their officials and employees, on the application of the Hodges, promptly correct or amend all misinformation contained in the [AMF], immediately reporting such corrections or amendations to the Hodges, or explaining in detail the agencies' refusal to make the requested corrections or amendments;

Complaint ¶ 51(c). Apparently relying on the existence of a protected interest in professional reputation, the plaintiffs assert this right as part of an effort to ensure that the AMF contains only information that they approve. Of course, as this Court already has noted, no such protected interest exists to support such an asserted right. Accordingly, this Court rejects the plaintiffs' third asserted procedural due process right.

Fourth, the plaintiffs assert a right

to require that the CCDSS, the MDHR, or both provide the Hodges with the opportunity, in a prompt administrative *hearing,* to challenge any findings, reports, or other conclusory statements of "abuse," and the refusal of the CCDSS or the MDHR to correct or amend misinformation, contained in the [AMF];

Complaint ¶ 51(d) (emphasis in original). Here, the plaintiffs combine the hearing requirement of § 5–715 with a right to appeal to enforce the third asserted procedural due process right, which this Court has rejected above. Because only the former element of this asserted right relates to the Hodges' protected interest in familial privacy and their challenge to the established state procedures that led to the alleged deprivation of that interest, this Court will reject the latter part of this asserted right.

In their fifth, sixth, and seventh asserted procedural due process rights, the plaintiffs claim a right

to require that the CCDSS and the MDHR inform the Hodges of each request by any agency of local, state, or national government, or by any private party, that may result in the release thereto of any information contained in the [AMF], with

(i) a complete identification of the agency or party requesting the information;

(ii) specification of the information to be released; and

(iii) reference to the basis in statute or regulation for the release of such information to that agency or party, all of the foregoing to be provided a reasonable time before any such release may be made;

to require that the CCDSS and the MDHR in no event release any information whatsoever contained in the [AMF] without including in the release materials a prominent certification that the alleged child abuse has been "RULED OUT," or otherwise found to be without legal or evidentiary basis; [and]

to require that CCDSS and the MDHR provide the Hodges with complete, accurate, and legible copies of all information contained in the [AMF] that has been released to anyone, immediately upon such release;

Complaint ¶ 51(e)–(g). Like the third asserted right above, these asserted rights closely relate to the adult Hodges' claimed protected interest in their professional reputations, which this Court holds does not exist. These asserted rights do not relate to the established state procedure challenged by the plaintiffs in this case. Finally, as noted above, although the sharing of information contained in the Hodges' case file implicates their protected interest in familial privacy, a balancing of interests reveals that the Hodges have received all of the process that is due in that regard. Emphasizing that the adult Hodges may not use the Due Process Clause of the Fourteenth Amendment to vindicate their reputations, this Court rejects these asserted procedural due process rights.

Finally, the plaintiffs assert a right

inasmuch as in the case of David R. Hodge and Martha A. Hodge the evidence adduced by the investigation pro-

vided no basis whatsoever for reasonable suspicion of child abuse, to require that the CCDSS and the NDHR forthwith expunge

> (i) the names of David R. Hodge, Martha A. Hodge, and Joseph E. Hodge from any "central registry," "AMF," or functionally equivalent system of data-storage and data-retrieval;
>
> (ii) any and all records, documents, entries, data, or other written or otherwise recorded information and materials that refer in any way either to David R. Hodge and Marsha A. Hodge, whether as "alleged child abusers" as such or by any similar term, classification, description, or rubric; or to Joseph E. Hodge as a "victim of child abuse" as such or by any similar term, classification, description, or rubric; or to David R. Hodge, Marsha A. Hodge, or Joseph E. Hodge as recipients from the CCDSS of "services" as such or by any similar term, classification, description, or rubric; and
>
> (iii) any and all records, documents, entries, data, or other written or otherwise recorded information and materials that refer in any way to the alleged incident of child abuse involving Joseph E. Hodge.

Complaint ¶ 51(h). Falling four-square within the scope of the plaintiffs' claim for deprivation of their protected interest in familial privacy, this last claim remains part of this case. Now this Court will address the last of the arguments raised by the individual defendants in support of their motion.

### C. *Qualified Immunity*

 Qualified immunity acknowledges that subjecting public officials with discretionary functions to insubstantial lawsuits burdens not only the defendant officials, but society as a whole. *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). Balanced against that concern, however, is the recognition that, "[i]n situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Harlow*, 457

U.S. at 814, 102 S.Ct. at 2736; *see Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 2910–11, 57 L.Ed.2d 895 (1978) ("it is not unfair to hold liable the official who knows or should know he is acting outside the law") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Accordingly, public officials enjoy qualified immunity from liability under § 1983 unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. In other words, "in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Finally, the defense of qualified immunity does not shield public officials from liability in their official capacities, but only in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

 As noted above, the plaintiffs in this case have stated a claim against the individual defendants under § 1983 for the deprivation of the plaintiffs' protected liberty and property interests in familial privacy and in the procedures established by Maryland law. With regard to the first of those interests, not only was the existence of a protected interest in familial privacy "clearly established" in January 1989, when CCDSS first learned that Joseph Hodge could not possibly have suffered child abuse, but the Supreme Court in 1977 noted that "[o]ur decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." *Moore v. East Cleveland, Ohio*, 431 U.S. 494, 503, 97 S.Ct. 1932, 1937–38, 52 L.Ed.2d 531 (1977); *see also Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 842, 97 S.Ct. 2094, 2108–09, 53 L.Ed.2d 14 (1977) (acknowledging the existence of a 'private realm of family life which the state cannot enter') (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944)).

Similarly, the Eighth Circuit in 1985 recognized that collecting information relating to suspicions of child abuse implicated the "privacy and autonomy of familial relationships." *Bohn,* 772 F.2d at 1435.

Equally "clearly established" in January 1989 were the procedural safeguards set out in Md.Fam.Law Code § 5–715 and its supporting regulations governing the inclusion of records of cases of suspected child abuse on the central registry. To the extent that the individual defendants in this case disregarded those procedures as part of an "established state procedure," the plaintiffs may assert their claims in this case.

The individual defendants argue that they made every effort in good faith to comply with Maryland law, and that therefore they enjoy qualified immunity in this case. However, the proper inquiry for qualified immunity in this case is whether the individual defendants reasonably complied with federal law, not state law. Obviously, compliance with state law cannot absolve a public official of liability in connection with the deprivation of clearly established rights under the Constitution.

### D. *Conclusion*

Before leaving the defendants' motion to dismiss or for summary judgment and considering the plaintiffs' counterpart motion, this Court will review its holding. On the grounds of Eleventh Amendment immunity, this Court will dismiss CCDSS from the case. After careful consideration of the record in this case, this Court concludes that the plaintiffs have stated a claim under § 1983 based on the alleged deprivation of their protected interest in familial privacy and in connection with their challenge to the established state procedure refusing to recognize the AMF as a central registry within the meaning of § 5–715. Finally, this Court rejects the argument that the individual defendants enjoy qualified immunity to liability in their individual capacities. Indeed, taking all of the evidence in

this case in the light most favorable to the plaintiffs, the unlawfulness of the defendants' actions was clearly apparent. *See Anderson v. Creighton,* 483 U.S. at 638, 107 S.Ct. at 3038.

## II. MOTION FOR INTERLOCUTORY SUMMARY JUDGMENT

 Having declined either to dismiss the complaint or to grant summary judgment in favor of the defendants, this Court now will consider the motion of the plaintiffs for interlocutory summary judgment as to the liability of the individual defendants. For the purposes of this motion, of course, the tables are turned; this Court must construe the evidence and reasonable inferences drawn therefrom in the light most favorable to the *defendants,* and any genuine issues of material fact raised by the defendants will defeat the plaintiffs' motion.

However, the defendants must proffer more than "a mere scintilla of evidence" in opposition to the motion. *Anderson v. Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. While not weighing the evidence or determining the truth for the purposes of this motion, this Court must ask "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 249, 252, 106 S.Ct. at 2510–12.

 The plaintiffs argue that the undisputed facts in the record in this case demonstrate that the defendants deprived the Hodges of liberty and property without due process of law when they entered the record of the Hodges' case file onto the AMF without notice or a hearing. The Hodges ground their request for summary judgment on their protected interest in familial privacy and on their challenge to the established state procedure refusing to recognize the AMF as a central registry.[6]

With respect to the alleged deprivation of familial privacy, the undisputed facts indicate that the defendants maintained the

---

**6.** The adult Hodges also assert an interest in professional reputation, but as noted above, this Court holds that the Due Process Clause of the

Fourteenth Amendment does not protect such an interest in this case.

Hodges' case file on the AMF even after reaching the conclusion that Joseph could not have been the victim of child abuse. As discussed at length above, the deprivation occurred without due process of law, in that no legitimate state interest supported maintaining the Hodges' case file after the true nature of Joseph's condition was discovered. The defendants have failed to present any evidence to raise any genuine issues of material fact in connection with that issue. Accordingly, this Court will grant the plaintiffs' motion for interlocutory summary judgment in connection with the deprivation of the Hodges' protected interest in familial privacy.

With regard to the plaintiffs' challenge to the established state procedure of refusing to recognize the AMF as a central registry, the defendants have submitted a number of affidavits to support their claim that the AMF is not a central registry under Maryland law. However, those affidavits typically contain only conclusory statements. *See* Affidavit of David R. Hodge, Ex. AI (affidavit of Linda Heisner, an official at SSA, in which she asserts that "[i]n practice, no central registries exist today, nor have they since 1986").[7] The defendants have submitted no otherwise admissible evidence that would support an inference that the AMF is *not* a registry containing the records of cases of suspected child abuse. *See* COMAR 07.02.07.-02B(1).

Moreover, the defendants have not raised a genuine issue of material fact in connection with the issue of whether persons listed on the AMF are "suspected child abusers," especially in the face of the affidavits of Charles Bosley, Cassandra Hillmon, and Selena Thomas, submitted by the plaintiffs to support their position on that issue. Based on the evidence presently in the record, this Court finds that no reasonable jury could conclude that the AMF does not list the names of suspected child abusers. Accordingly, this Court will grant the plaintiffs' motion for interlocutory summary

judgment in connection with their challenge to the established state practice of refusing to comply with § 5–715 in connection with the AMF.

## III. CONCLUSION

In January 1989, the Hodges brought their three-month-old son into the hospital for treatment of a bone infection. Because of a misdiagnosis, CCDSS conducted an investigation. Although child abuse was ruled out to a medical certainty, and despite the procedural requirements of Md. Fam.Law Code § 5–715, CCDSS placed a record of the Hodges' case into the AMF, a central registry of cases of suspected child abuse, without notifying the Hodges or affording them an opportunity for a hearing. Today, this Court holds that the entry of that case file onto the AMF, and the established state procedure that facilitated the entry, deprived the Hodges of their protected interest in familial privacy without due process of law. This Court will execute an Order on this date in accordance with the foregoing Memorandum.

---

7. The parties disagree as to the evidentiary value of Heisner's affidavit. To the extent that the affidavit contains sworn statements made upon the personal knowledge of a competent witness, however, the affidavit complies with the requirements of Rule 56(e). Accordingly, this Court concludes that the defendants may rely on the Heisner affidavit.