31 F.3d 157
 63 USLW 2081
 David R. HODGE; Marsha A. Hodge, his wife, individually and
as parents and next friend of a minor, Joseph E.
Hodge, Plaintiffs-Appellees,
v.
M. Alexander JONES, Director of the Carroll County
Department of Social Services, in his official and
individual capacities; Alan L. Katz, Assistant Director of
the Carroll County Department of Social Services, in his
official and individual capacities; Carolyn W. Colvin,
Secretary of the Department of Human Resources of the State
of Maryland, in her official and individual capacities,
Defendants-Appellants,
and
Carroll County Department of Social Services, Defendant.
 No. 93-1182.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 9, 1993.
Decided July 19, 1994.
 
 ARGUED: Evelyn Omega Cannon, Asst. Atty. Gen., Baltimore, MD, for appellants. Edwin Vieira, Jr., Manassas, VA, for appellees. ON BRIEF: J. Joseph Curran, Jr., Atty. Gen., Donna R. Heller, Asst. Atty. Gen., Baltimore, MD, for appellants. Tracy E. Mulligan, Rockville, MD, for appellees.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WIDENER and WILLIAMS, Circuit Judges.
 Vacated in part, reversed in part, and remanded with instructions by published opinion. Judge WILLIAMS wrote the opinion, in which Judge WIDENER concurred. Justice POWELL wrote a separate opinion concurring in the judgment.
 OPINION
 WILLIAMS, Circuit Judge:
 
 
 1
 We are presented with the question of the applicability of a qualified immunity affirmative defense in the context of a 42 U.S.C. Sec. 1983 (1988), action challenging the constitutionality of Maryland's maintenance of records pertaining to suspected child abuse investigations after the alleged abusive parents have been cleared of the charges by the Department of Social Services. After finding that this practice violated Plaintiffs' substantive due process right of familial privacy and procedural due process rights, the district court denied the Defendant state officials' assertion of a qualified immunity defense and granted interlocutory summary judgment to the Plaintiff-parents on the issue of liability. We reverse, holding that, because Defendants' actions violated no clearly established federal constitutional or statutory right, the district court erroneously found for Plaintiffs on the issue of liability and denied Defendants the benefit of qualified immunity, 812 F.Supp. 593.
 
 I.
 A.
 
 2
 On January 20, 1989, David and Marsha Hodge took their three-month-old son Joseph to the Carroll County General Hospital in Westminster, Maryland, for examination and treatment of the child's swollen right arm. The examining physician diagnosed a fractured ulna " 'without adequate historical explanation' " and, pursuant to state law, Md.Fam.Law Code Ann. Sec. 5-704(a) (1991 Repl.Vol.), contacted the Carroll County Department of Social Services (CCDSS) to report suspected child abuse. (J.A. at 15.) An investigation was initiated the next day by a Child Protective Services (CPS) caseworker and a Maryland State police officer, which ultimately yielded no evidence of abuse. The caseworker filed a report with the CCDSS classifying the case as "unsubstantiated" and "ruled out."[1] (J.A. at 15.)
 
 
 3
 Within a week of the incident, the Hodges took Joseph to two medical specialists for further examination. The specialists diagnosed the swelling as osteomyelitis, a bacterial bone infection, and performed the necessary corrective surgery. Five days after the caseworker closed his investigation, Marsha Hodge called CCDSS with news of the corrected diagnosis. On February 16, 1989, David Hodge wrote CCDSS, again informing them of the misdiagnosis and requesting a copy of any CCDSS case file on the incident. In March 1989, Defendant Alan L. Katz, Assistant Director of CCDSS, replied by letter that "[t]he Department's report reflects that suspected child abuse was ruled out and unsubstantiated," and attached a redacted copy of the case file. (J.A. at 16.)
 
 
 4
 Between February 1989 and May 1990, the Hodges engaged in a campaign of communications with Katz and other CCDSS officials and Maryland Department of Human Resources (MDHR)[2] Director Carolyn Colvin requesting, among other things, the full report and the destruction or expunction of any CCDSS file or document regarding the Hodge investigation. Each request was refused under Maryland's statutory bar against disclosure of confidential materials, pursuant to Md.Ann.Code art. 88A, Sec. 5 (1991 Repl.Vol.) and Md.Regs.Code 07.01.07, and CCDSS's purported inability to expunge the file until 1994.[3] CCDSS maintained the Hodge investigation report up to and beyond the filing date of the instant action. CCDSS also registered the names David, Marsha, and Joseph Hodge in MDHR's Automated Master File (AMF), a computerized database containing a record of every Maryland citizen who has received any services, ranging from food stamps to child protective services, from a local Department of Social Services office. The AMF information pertaining to the Hodges is alphanumerically coded and shielded by state and federal law from disclosure to the general public.[4] Md.Ann.Code art. 88A, Sec. 6 (1991 Repl.Vol. & 1993 Cum.Supp.); Md.Regs.Code 07.01.02, 07.02.07.
 
 B.
 
 5
 Continued refusals to disclose and expunge the investigation report prompted David and Marsha Hodge, individually and as parents and next friends of Joseph Hodge,[5] to file this action against CCDSS, its Director M. Alexander Jones, Assistant Director Katz, and MDHR Secretary Colvin. The Hodges claimed that, contrary to the protections of the Due Process Clause of the Fourteenth Amendment, maintenance of a record of "unsubstantiated" and "ruled out" child abuse violated their liberty interest in familial privacy, and that failure to provide notice and a hearing before maintaining that record violated their procedural due process rights.
 
 
 6
 Finding that Defendants maintained the Hodge investigation report without legitimate justification and entered the related entries into the AMF without a legitimate state interest or the procedural protections of Sec. 5-715, the district court granted the Hodges' motion for interlocutory summary judgment on the issue of liability. Hodge, 812 F.Supp. at 608-09. The court rejected Defendants' proffered qualified immunity defense on a determination that both the protected interest of familial privacy and the procedural safeguards ofSec. 5-715 were clearly established at the time of Defendants' acts. Id. at 607-08. Defendants have properly invoked the "collateral order" doctrine in appealing the denial of their qualified immunity defense. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985).
 
 II.
 
 7
 Qualified immunity "is an accommodation by the courts to the 'conflicting concerns' of, on one hand, government officials seeking freedom from personal monetary liability and harassing litigation and, on the other hand, injured persons seeking redress for the abuse of official power." Hodorowski v. Ray, 844 F.2d 1210, 1216 (5th Cir.1988) (quoting Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). As such, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson, 483 U.S. at 639, 107 S.Ct. at 3038 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 2738-39, 73 L.Ed.2d 396 (1982)). We have previously held that individuals involved in the investigation of child abuse may properly assert qualified immunity in appropriate situations. Wildauer v. Frederick County, 993 F.2d 369, 373 (4th Cir.1993); see also Achterhof v. Selvaggio, 886 F.2d 826, 829-30 (6th Cir.1989) (the entry of an individual's name in a central registry as a child abuse suspect is an administrative act for which qualified immunity may be asserted).
 
 
 8
 In finding that Defendants were not entitled to qualified immunity, the district court concluded that they had violated the Hodges' "clearly established" constitutional right of familial privacy and autonomy, which it defined by referencing the Supreme Court's 1977 pronouncement that "[o]ur decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition," Moore v. City of East Cleveland, 431 U.S. 494, 503, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977), and acknowledging the " 'private realm of family life which the state cannot enter,' " Smith v. Organization of Foster Families for Equality & Reform, 431 U.S. 816, 842, 97 S.Ct. 2094, 2108, 53 L.Ed.2d 14 (1977) (quoting Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944)). Hodge, 812 F.Supp. at 607. The court also cited Bohn v. County of Dakota, 772 F.2d 1433, 1435 (8th Cir.1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1192, 89 L.Ed.2d 307 (1986), an Eighth Circuit case recognizing the privacy implications of information repositories pertaining to suspected child abuse. Hodge, 812 F.Supp. at 608.
 
 
 9
 We review the court's denial of qualified immunity de novo. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 559, 126 L.Ed.2d 459 (1993). The Supreme Court requires that such review begin with an inquiry into whether familial privacy was indeed a clearly established constitutional right which Defendants violated by retaining the Hodge investigation report. Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 1792-93, 114 L.Ed.2d 277 (1991). This requires that we focus first on the confines of the asserted liberty interest of familial privacy.
 
 A.
 
 10
 Much like the foundational concept of individual privacy, see Roe v. Wade, 410 U.S. 113, 152-53, 93 S.Ct. 705, 726-27, 35 L.Ed.2d 147 (1973), the sanctity of the family unit is a fundamental precept firmly ensconced in the Constitution and shielded by the Due Process Clause of the Fourteenth Amendment. Jordan by Jordan v. Jackson, 15 F.3d 333, 343 (4th Cir.1994) ("The bonds between parent and child are, in a word, sacrosanct, and the relationship between parent and child inviolable except for the most compelling reasons."); see Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-13, 31 L.Ed.2d 551 (1972) (familial integrity shielded by Ninth Amendment and Due Process and Equal Protection Clauses of Fourteenth Amendment). The concept of familial privacy has been restricted by the Supreme Court to (1) thwarting governmental attempts to interfere with particularly intimate family decisions,[6] and (2) voiding government actions that sever, alter, or otherwise affect the parent/child relationship.[7] Likewise, the individual privacy cases have focused primarily on shielding two interests: "the individual interest in avoiding disclosure of personal matters, and ... the interest in independence in making certain kinds of important decisions." Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) (footnotes omitted). Following that lead, circuit courts have strictly construed actionable violations of the familial privacy right to encompass only those instances where state officials' actions were directly aimed at the parent-child relationship, Pittsley v. Warish, 927 F.2d 3, 8 (1st Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991), implicated the "most essential and basic aspect of familial privacy--the right of the family to remain together without the coercive interference of the awesome power of the state," Duchesne v. Sugarman, 566 F.2d 817, 825 (2d Cir.1977), "drove a wedge into [a] family and threatened its very foundation," or "eroded the family's solidarity internally and impaired the family's ability to function," Bohn, 772 F.2d at 1436 n. 4.
 
 
 11
 The maxim of familial privacy is neither absolute nor unqualified, and may be outweighed by a legitimate governmental interest. Moore, 431 U.S. at 499-500, 97 S.Ct. at 1935-36; see Lehr v. Robertson, 463 U.S. 248, 256, 103 S.Ct. 2985, 2990-91, 77 L.Ed.2d 614 (1983) (constitutional protection available for parent-child relationship in "appropriate cases"); Prince, 321 U.S. at 166, 64 S.Ct. at 442 ("But the family itself is not beyond regulation in the public interest...."). "The right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." Watterson v. Page, 987 F.2d 1, 8 (1st Cir.1993). In this case, the Hodges concede, as indeed they must, that Maryland has a legitimate interest in curtailing the abuse and neglect of its minor citizens. See Santosky, 455 U.S. at 766, 102 S.Ct. at 1401-02 (state has "parens patriae interest in preserving and promoting the welfare of the child"). But see Parham v. J.R., 442 U.S. 584, 603, 99 S.Ct. 2493, 2504-05, 61 L.Ed.2d 101 (1979) ("The statist notion that governmental power should supersede parental authority in all cases because some parents abuse and neglect children is repugnant to American tradition." (emphasis in original)). The Hodges contend, however, that the legitimate governmental interest is extinguished once reports of suspected child abuse have been determined to be "unsubstantiated" or "ruled out," thereby necessitating the elimination of any and all records pertaining to the vindicated suspect and his or her alleged acts.
 
 
 12
 There is little, if any, clear guidance in the relevant caselaw that would permit us to chart with certainty the amorphous boundaries between the Scylla of familial privacy and the Charybdis of legitimate governmental interests. Frazier v. Bailey, 957 F.2d 920, 931 (1st Cir.1992) ("[T]he dimensions of [the] right [to familial privacy] have yet to be clearly established."); see also Doe v. Louisiana, 2 F.3d 1412, 1416 (5th Cir.1993) (while there is a constitutional right to "family integrity," it is not clearly established), cert. denied, --- U.S. ----, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); Hodorowski, 844 F.2d at 1217 (the right to "family integrity" is a "nebulous" one). Nonetheless, we are convinced that, whatever the precise confines of the familial privacy right, the pale shadow briefly cast over the Hodges by Defendants' actions cannot be classified within either of the lines of Supreme Court familial privacy cases, and thereby constitutes "[s]tate action that affects the parental relationship only incidentally ... [and] is not sufficient to establish a violation of a [sic] identified liberty interest." Pittsley, 927 F.2d at 8; see Griffin v. Strong, 983 F.2d 1544, 1549 (10th Cir.1993) (police officer's false statement to plaintiff, that her husband had confessed to child abuse, did not unduly interfere with plaintiff's right of familial association).
 
 
 13
 Although the records retained by CCDSS reference the Hodge family, the facts of this case do not reach "an abstract due process liberty interest in family relationships." Frazier, 957 F.2d at 930. The Hodges' utter failure to demonstrate that Defendants' actions were designed to have, have had, or even will have, a significant impact on the parent-child relationship or on their family's ability to function precludes the establishment of a familial privacy infringement of constitutional magnitude.[8] See Santosky, 455 U.S. at 753-54, 102 S.Ct. at 1394-95; Griffin, 983 F.2d at 1548; cf. Rucker v. Harford County, 946 F.2d 278, 282 (4th Cir.1991) (police conduct neither directed at nor directly impinging upon family relationship does not violate liberty interest of intimate association of the family), cert. denied, --- U.S. ----, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992). "[T]he liberty interest protected by the substantive due process clause was [not] intended to protect every conceivable family relationship from governmental interference, no matter how far removed...." Pittsley, 927 F.2d at 9.
 
 
 14
 Our reading of the Hodges' complaint reveals no more than a conclusory allegation of reputational injury which, absent a cognizable stigma and the ensuing loss of a tangible interest, fails to state a cause of action under Sec. 1983.[9] See Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160-61, 47 L.Ed.2d 405 (1976). The Hodges have neither alleged nor demonstrated any alteration of legal status or injury resulting from any purported defamation that would warrant a finding of a deprivation of a liberty interest otherwise shielded by the substantive and procedural guarantees of the Fourteenth Amendment. See id. at 708-09, 96 S.Ct. at 1164. The only altered legal status discernable from the Hodges' claims is the investigation report's potentially negative impact on the national security clearances that David and Marsha Hodge hold, and must continue to hold, in connection with their employment. Because national security clearances are not "property" within the protective scope of the Due Process Clause, Jamil v. Secretary, Dep't of Defense, 910 F.2d 1203, 1209 (4th Cir.1990), that potential negative impact does not constitute a tangible deprivation resulting from governmental action. See Paul, 424 U.S. at 708, 96 S.Ct. at 1164.
 
 
 15
 Moreover, given the extensive confidentiality provisions protecting the Hodge investigation report, we see no avenue by which a stigma or defamation labeling the Hodges as child abusers could attach. See Bollow v. Federal Reserve Bank, 650 F.2d 1093, 1101 (9th Cir.1981) ("Unpublicized accusations do not infringe constitutional liberty interests because, by definition, they cannot harm 'good name, reputation, honor, or integrity.' ") (quoting Bishop v. Wood, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976)), cert. denied, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982); see also Watson v. Lowcountry Red Cross, 974 F.2d 482, 487-88 (4th Cir.1992) (remote possibility of public disclosure of confidential medical records does not rise to level of constitutional privacy violation). Maryland law provides that the unauthorized disclosure of confidential information regarding reports of abuse or neglect is a misdemeanor, subject to imprisonment up to ninety days, a fine up to $500, or both. Md.Ann.Code, art. 88A, Sec. 6(b), (e). Data concerning a child abuse investigation and its disposition is entered into the AMF in alphanumeric code and is not accessible to the general public. Information from these records may be disclosed only to a limited number of persons specified by state statute, including social services or CPS officials investigating abuse or providing services to persons named in the reports or otherwise carrying out their official functions, licensed practitioners rendering medical care to an abused child, and under certain circumstances the parent or custodian and the alleged abuser. Md. Ann.Code, art. 88A, Sec. 6(b). We agree with the district court that these safeguards "adequately limit access to the information [pertaining to the Hodges]." Hodge, 812 F.Supp. at 602.
 
 
 16
 The Maryland statutory safeguards are virtually identical to those deemed satisfactory by the Supreme Court in the context of a New York computerized database identifying all users and prescribers of Schedule II pharmaceuticals within the State of New York. Whalen, 429 U.S. at 593-95, 605, 97 S.Ct. at 873-75, 879. The tangential possibility of public disclosure of the Hodge investigation report or the AMF entry, through such theoretical means as negligent or improperly-motivated state employees or fortuitous computer hackers, cannot by itself implicate a constitutional privacy right. Id. at 600-02, 97 S.Ct. at 876-78; Watson, 974 F.2d at 487; Walls v. City of Petersburg, 895 F.2d 188, 194 (4th Cir.1990)("When there are precautions to prevent unwarranted disclosure, an individual's privacy interest is weakened."). Despite "the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files," the record in this case does nothing to refute our conclusion that Maryland's "statutory scheme, and its implementing administrative procedures, evidence a proper concern with, and protection of, the [Hodges'] interest in privacy." Whalen, 429 U.S. at 605, 97 S.Ct. at 879.
 
 
 17
 We see a correlation between the instant case and the maintenance of arrest and criminal records, even after the persons implicated therein have been acquitted or the charges upon which those records are predicated are dropped. While it is true that such records may be expunged, there is no automatic right to expunction once an individual's name has been cleared. See United States v. Pinto, 1 F.3d 1069, 1070 (10th Cir.1993); United States v. Scott, 793 F.2d 117, 118 (5th Cir.1986). Expunction in those instances is a discretionary function of the court, rarely utilized absent extreme circumstances, and "mere acquittal of the subsequent charge is an insufficient reason to grant expunction." United States v. Friesen, 853 F.2d 816, 818 (10th Cir.1988); see also Geary v. United States, 901 F.2d 679, 680 (8th Cir.1990) (same); United States v. Stromick, 710 F.Supp. 613, 614 (D. Md.1989) (convicted individual's subsequent law-abiding life does not warrant expunging criminal records). Given that arrest and criminal records are matters of public record, easily obtained upon request, and that there is no automatic right to expunction thereof, it simply does not follow that the Hodges can claim a right of expunction of unsubstantiated abuse records maintained in a manner consistent with the Constitution and procedural safeguards approved by the Whalen Court. Reuber v. United States, 750 F.2d 1039, 1068 (D.C.Cir.1984) (Bork, J., concurring) (records expunged only where such procedures are "essential to prevent future harm" from constitutional violations).
 
 
 18
 The Hodges do not contend, and the record would not support a contention, that CCDSS failed to comply with its statutory duty to expunge the Hodge investigation report in January 1994, five years after the filing of that report. See supra note 3. The absence of such a contention renders the Hodges' claims for injunctive and declaratory relief moot. Our concern in this appeal is therefore restricted to the Hodges' justiciable claims for damages and attorney fees against Defendants in their individual capacities. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (Eleventh Amendment precludes monetary damages against state officers in their official capacities).
 
 
 19
 Finally, we note our disagreement with the Hodges' contention that the State lacks a legitimate governmental interest once an abuse report has been deemed "unsubstantiated" or "ruled out." The retention of these investigation reports continues to serve legitimate state interests in the welfare of children. For instance, a series of "unsubstantiated" or "ruled out" entries for a given child may arouse suspicion of a pattern or practice of emotional and physical harm to a child, warranting further inquiry by the State. Retained records could, in fact, protect the individual whose record is kept by preventing repeated investigations when more than one person makes the same accusation. Finally, such records allow the state to defend itself in the event of a suit alleging inadequate investigation of a reported instance of child abuse. See Roth v. Reagen, 422 N.W.2d 464 (Iowa 1988). We should not interfere with a State's concentrated efforts to implement an orderly and rational legislative scheme calculated to halt the growing problem of child abuse. See Whalen, 429 U.S. at 597-98, 97 S.Ct. at 875-76.
 
 
 20
 The Hodges would have us expand penumbral privacy rights beyond the fixed boundaries of established precedent in order to establish a justiciable injury in the confidential maintenance of "unsubstantiated" or "ruled out" child abuse investigation reports. We decline to tread so boldly, echoing instead the Supreme Court's prudent restraint in refusing "to take a more expansive view of our authority to discover new fundamental rights imbedded in the Due Process Clause." Bowers v. Hardwick, 478 U.S. 186, 194, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986). The record before us presents no substantive due process violation of a familial privacy liberty interest by virtue of the retention of the Hodge investigation report.[10]
 
 B.
 
 21
 Given our conclusion above, it is technically unnecessary for us to discuss the district court's denial of qualified immunity. "If there is no violation of a federal right, there is no basis for a section 1983 action and no answer to a plea by the public officer of qualified immunity." Clark v. Link, 855 F.2d 156, 161 (4th Cir.1988).
 
 
 22
 Nevertheless, we feel compelled to address a matter raised in the district court's opinion with which we find a fundamental error, namely the court's generalized formulation of a constitutional right which prevents reasonable government officials from knowing just what conduct is actually prohibited by the broad concept of family inviolability. Anderson, 483 U.S. at 639, 107 S.Ct. at 3038-39 ("[I]f the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of Harlow ... [and would transform Harlow ] from a guarantee of immunity into a rule of pleading."). We commend the district court's thoughtful consideration of the familial privacy right, but note that it is this very need for such complex legal analysis that renders a denial of qualified immunity inappropriate in this case. Absent our conclusion that Defendants violated no constitutional rights, this would be a proper case for the application of qualified immunity because "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). To expect Defendants to resolve what reasonable jurists have long debated--namely the precise strictures of the penumbral right of familial privacy, cast in the sweeping language of the Supreme Court cases cited by the district court, especially in the face of a legitimate state interest such as the effective detection and prevention of child abuse--is to impose burdens and expectations well beyond their reasonable capacities.[11] See Swanson v. Powers, 37 F.2d 965, 968 (4th Cir.1991) (inappropriate to deny qualified immunity where state official would be required "to predict the future course of constitutional law," or "to recognize the significance of a few scattered cases from disparate areas of the law" (quoting Lum v. Jensen, 876 F.2d 1385, 1389 (9th Cir.1989) and Lojuk v. Johnson, 770 F.2d 619, 628 (7th Cir.1985))), cert. denied, --- U.S. ----, 112 S.Ct. 871, 116 L.Ed.2d 777 (1992).
 
 
 23
 Absent more fact-specific authority to assist them, these state officials could not have known that the maintenance of records pertaining to the Hodges violated the enigmatic right of familial privacy. Hodorowski, 844 F.2d at 1217 (state officials could not have known that removing plaintiffs' children from their home violated the right of family integrity). On the facts of this case and in light of preexisting law, we cannot say that the purported unlawfulness of retaining records of unsubstantiated child abuse charges should have been apparent to Defendants. Anderson, 483 U.S. at 640, 107 S.Ct. at 3039; Swanson, 937 F.2d at 969 ("[T]he 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." (quoting Anderson, 483 U.S. at 640, 107 S.Ct. at 3039)). Because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986), that defense was improvidently denied below.
 
 III.
 
 24
 Finally, as to the Hodges' claims of procedural due process violations, our decision in Section II.A. that no protected liberty interest was implicated by Defendants' actions obviates any federal constitutional requirement of procedural due process. Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). The fact that Defendants' acts may have violated various Maryland statutory provisions, including Sec. 5-715, is of no consequence in a Sec. 1983 action, since a State's violation of its own laws or procedural rules, creating rights beyond those guaranteed by the Constitution, cannot support a federal due process claim. Olim v. Wakinekona, 461 U.S. 238, 248-51, 103 S.Ct. 1741, 1746-49, 75 L.Ed.2d 813 (1983); Riccio v. County of Fairfax, 907 F.2d 1459, 1466 (4th Cir.1990); Weller v. Dep't of Social Servs., 901 F.2d 387, 392 (4th Cir.1990). Hence, the Hodges have no cognizable claim for violation of any federal procedural due process rights.
 
 IV.
 
 25
 In conclusion, the Hodges have not demonstrated a violation of any federal constitutional or statutory right of familial privacy. The confines of that right were not so clearly established that, even if Defendants' acts did impinge the Hodge family's zone of privacy, they could objectively or reasonably have known that their conduct violated the Due Process Clause. The absence of any liberty interest deprivation requires that we vacate the partial judgment for Plaintiffs on the issue of liability, reverse the district court's order rejecting Defendants' proffered qualified immunity, and remand with instructions to enter a judgment in favor of Defendants.
 
 
 26
 VACATED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
 
 
 27
 POWELL, Associate Justice, concurring in the judgment:
 
 
 28
 Defendants appeal, prior to final judgment, the district court's denial of their claim of qualified immunity. See Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Defendants are entitled to qualified immunity from civil monetary damages if their conduct did not violate the Hodges' clearly established federal statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In deciding this question, the Court may, in the exercise of its discretion, reach the merits of the underlying constitutional question at issue. See O'Bar v. Pinion, 953 F.2d 74, 80 (4th Cir.1991). I prefer not to reach them.
 
 
 29
 The Hodges contend that Defendants violated their substantive and procedural rights under the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. XIV, Sec. 1. To rely on the Due Process Clause, the Hodges must establish a life, liberty or property interest protected by that Clause. Weller v. Department of Social Servs., 901 F.2d 387, 391 (4th Cir.1990). In this case, there are two possible sources of a constitutionally protected liberty interest: (1) the Due Process Clause itself, and (2) the statutory scheme established by Maryland to protect the rights of suspected child abusers.
 
 
 30
 For the reasons stated by the Court in Section II.B., I agree that the Hodges have not alleged a violation of a clearly established, constitutionally protected liberty interest in "familial privacy." See Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir.1992) ("In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." (citations omitted)). Nor have they alleged a violation of a clearly established, constitutionally protected liberty interest founded in Maryland law. See Hewitt v. Helms, 459 U.S. 460, 469, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983) ("[A] State may create a liberty interest protected by the Due Process Clause through its enactment of certain statutory or regulatory measures."). Even assuming that the Automated Master File is a "central registry" to which Maryland's procedural guarantees attach, see Md.Fam.Law Code Ann. Sec. 5-715 (1993 Cum.Supp.), it is not clearly established that such procedures place "substantive limitations on official discretion" sufficient to create a liberty interest protected by the federal constitution of which a reasonable person in Defendants' position would have known. See Olim v. Wakinekona, 461 U.S. 238, 249-51, 103 S.Ct. 1741, 1747-49, 75 L.Ed.2d 813 (1983); Edwards v. Johnston County Health Dep't, 885 F.2d 1215, 1220 (4th Cir.1989) (noting that "mere procedural guidelines" do not create a constitutionally protected liberty interest) (citing Hewitt v. Helms, 459 U.S. at 471, 103 S.Ct. at 871).
 
 
 31
 Therefore, even assuming that Defendants' actions infringed a constitutionally protected liberty interest, such interest was not clearly established at the time of Defendants' conduct. As such, Defendants are entitled to qualified immunity and the Hodges' claims for monetary relief must fail. In addition, I agree with the Court that the Hodges' requests for declaratory and injunctive relief are moot. See ante, at 166. I thus concur in the judgment of the Court.
 
 
 
 [1]
 "Ruled out" is defined as "a finding that abuse, neglect, or sexual abuse did not occur," while an "unsubstantiated" report is one in which "there is an insufficient amount of evidence to support a finding of indicated or ruled out [abuse or neglect]." Md. Fam. Law Code Ann. Sec. 5-701(s), (u) (1993 Cum.Supp.)
 On January 27, 1989, the same day the caseworker filed the Joseph Hodge report, the Maryland Department of Human Resources adopted new disposition categories for reported incidents of child abuse, thereby reducing the categories from four (confirmed, indicated, uncertain, or ruled out) to two (indicated or unsubstantiated). Because the new regulations did not take effect until February 6, 1989, see 16 Md. Reg. 2, at 157 (Jan. 27, 1989), the caseworker classified the Hodge case as "ruled out" and "unsubstantiated" in an apparent attempt to comport with each regulation.
 
 
 [2]
 MDHR is the State department responsible for the coordination, administration, supervision, and monitoring of county-level departments of social services, including CCDSS
 
 
 [3]
 At the time in question, CCDSS was statutorily required to expunge "unsubstantiated" reports of suspected abuse or neglect after five years if no further incidents involving the same alleged perpetrator were reported during that time. See Md.Fam.Law Code Ann. Sec. 5-707(b) (1984 Repl.Vol. & 1987 Cum.Supp.); 1987 Md. Laws 635, Sec. 2. Under this scheme, the Hodge investigation report, filed in January 1989, would have been expunged in January 1994
 We note that, as of 1991, "ruled out" reports of abuse are expunged within 120 days of the report's filing. Md.Fam.Law Code Ann. Sec. 5-707(b) (1991 Repl.Vol.); see 1991 Md. Laws 461 (no applicable retroactivity provision).
 
 
 [4]
 Because it receives federal funding, MDHR is required to comply with the confidentiality requirements of 45 C.F.R.Sec. 205.50 (1993). See 45 C.F.R. Secs. 1355.21, 1355.30 (1993). Maryland is also required to ensure that "all records concerning ... reports of child abuse and neglect are confidential and that their unauthorized disclosure is a criminal offense," but "may authorize by statute disclosure to [certain persons and agencies] under limitations and procedures the State determines." 45 C.F.R. Sec. 1340.14(i)(1), (2) (1993); see Md.Ann.Code art. 88A, Sec. 6 (applicable Maryland provisions)
 In finding that Defendants had violated the Hodges' procedural due process rights, the district court determined that the AMF is a "central registry" within the meaning of Md.Fam.Law Code Ann. Sec. 5-715 (1993 Cum.Supp.); COMAR 07.02.02B(1), and was therefore subject to Maryland's procedural safeguards in Sec. 5-715(b)-(d), which were not properly accorded to the Hodges. Hodge v. Carroll County Dep't of Social Servs., 812 F.Supp. 593, 604 (D.Md.1992). In light of our conclusion that no constitutional right of familial privacy is implicated in this case, we need not review the district court's AMF determination.
 
 
 [5]
 In conducting our review of the complaint in this case, we are left with serious questions as to Joseph Hodge's standing in this cause of action. The Hodges' allegations focus on the purported detrimental labeling of David and Marsha Hodge as child abusers, but assert no injury stemming from the designation of Joseph as a supposed victim of abuse. The abridgment of the rights of personal and familial privacy and familial autonomy is alleged only as to David and Marsha Hodge. The Maryland procedural safeguards upon which the Hodges' procedural due process claims are predicated extend solely to persons suspected of abuse or neglect, not to the purported recipients of that abuse or neglect. Md.Fam.Law Code Ann. Sec. 5-715. Hence, the complaint's first claim for relief--alleging that David, Marsha, and Joseph Hodge were "deprived of fundamental and absolute rights of procedural due process they otherwise should enjoy as persons alleged to be child abusers," (J.A. at 46-47) (emphasis added)--is inapplicable to Joseph. The second claim for relief seeks redress for injuries suffered by David, Marsha, and Joseph Hodge as alleged in paragraph 46 of the complaint, which makes no mention of Joseph
 
 
 [6]
 See, e.g., Moore, 431 U.S. at 499-500, 97 S.Ct. at 1935-36 (family living arrangements); Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 639-40, 94 S.Ct. 791, 796-97, 39 L.Ed.2d 52 (1974) (mandatory maternity leave without pay); Roe, 410 U.S. at 154, 93 S.Ct. at 727 (abortion); Griswold v. Connecticut, 381 U.S. 479, 486, 85 S.Ct. 1678, 1682-83, 14 L.Ed.2d 510 (1965) (birth control); Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573-74, 69 L.Ed. 1070 (1925) (parochial education of children)
 
 
 [7]
 See, e.g., Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982) (termination of parental rights); Little v. Streater, 452 U.S. 1, 13, 101 S.Ct. 2202, 2209, 68 L.Ed.2d 627 (1981) (determining paternity); Stanley, 405 U.S. at 651-52, 92 S.Ct. at 1212-13 (unwed father's fundamental right in care and custody of children)
 
 
 [8]
 It is this very shortcoming that precludes the Eighth Circuit's decision in Bohn from controlling the instant case. In Bohn, once the investigation found evidence of purported abuse, state officials assigned social workers who repeatedly met with the Bohn family in an attempt to halt the purported abuse and related problems, thereby engaging in a campaign of intrusive conduct aimed at the very core of the Bohn family. Bohn, 772 F.2d at 1434-35. The Eighth Circuit found that the Bohns were exposed to "public opprobrium" and, thereby, stigmatized. Id. at 1436 n. 4. The Hodge investigation report was permitted to lie fallow within Maryland's confidential record-keeping system, unaccompanied by any state efforts to impinge upon the Hodge family. Hence, Bohn does not alter our conclusion that, by confidentially retaining unsubstantiated and ruled out abuse reports, Defendants remained clear of the Hodges' familial privacy rights. To the extent that the records maintained by Defendants erroneously identified the Hodges as child abusers for some period of time, such error is not actionable under Sec. 1983. See infra note 9
 
 
 [9]
 In their appellate brief, the Hodges make much of the fact that, upon the district court's unsealing of the Hodges' otherwise confidential CPS case file, it was discovered that between January 23, 1989 and January 21, 1992, the alphanumeric codes on the computerized data base component of the AMF erroneously described the Hodges' case as one of indicated sexual child abuse. In a style better suited to melodrama, the Hodges liken the AMF to East German police files maintained during that Communist regime, and histrionically argue that Defendants are guilty of usurping "a power to mimic the secret police of a totalitarian state." Appellees' Brief at 18 (emphasis in original)
 We find nothing in the record to indicate that the Hodges amended their complaint to allege this inaccuracy as an additional basis for recovery against Defendants. Notwithstanding the Hodges' apparent failure to preserve such a claim below, we agree with the district court's conclusion that "the state of the information on the AMF relates more to a common law claim for defamation than a constitutional claim for deprivation of liberty and property without due process of law. This is not a defamation case." Hodge, 812 F.Supp. at 603 n. 5 (emphasis in original) (J.A. at 87, n. 5); see Wildauer, 993 F.2d at 373 ("The publication of information regarding child abuse or neglect to entities authorized by law to receive such reports does not state a claim under Sec. 1983.").
 
 
 [10]
 The discussion above also supports our rejection of the Hodges' alternative argument, under the "residual protections of 'substantive due process,' " because nothing in the record supports their conclusory allegations of "state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Rucker v. Harford County, 946 F.2d 278, 281 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992). Defendants' conduct neither "shocks the conscience" nor "offends the community's sense of fair play and decency" because they did nothing more than "offend some fastidious squeamishness or private sentimentalism." Rochin v. California, 342 U.S. 165, 172, 173, 72 S.Ct. 205, 209, 210, 96 L.Ed. 183 (1952)
 
 
 [11]
 The district court erroneously relied on dicta in Bohn in finding that a report indicating the existence of "substantial evidence" of child abuse by parents could implicate the "privacy and autonomy of familial relationships." Hodge, 812 F.Supp. at 608 (quoting Bohn, 772 F.2d at 1434, 1435). Defendants' failure to discover and appreciate the significance of dicta contained in a decision by the Eighth Circuit is hardly a legitimate rationale for depriving them of qualified immunity. Achterhof v. Selvaggio, 757 F.Supp. 837, 840 (W.D.Mich.1991) ("Another circuit court's generalized remark regarding a family's rights ... fail to suggest the contours of any right that defendants reasonably should have known they were violating.")
 We are aware of a recent Second Circuit case in which that court found an adequate cause of action for a liberty interest deprivation where the plaintiff's inclusion on a child abuse central registry caused both defamation of her character and a statutory impediment to employment in the child care industry due to a requirement, under New York law, that all child care employers check the registry before hiring job applicants and submit a written explanation for hiring applicants actually listed in that registry. Valmonte v. Bane, 18 F.3d 992 (2d Cir.1994). Aside from the obvious factual distinctions between Valmonte and the instant case, the recent date of the Valmonte decision precludes its consideration as clearly established law at the time of Defendants' acts.