680 A.2d 470

C.S.

v.

**PRINCE GEORGE'S COUNTY DEPARTMENT OF SOCIAL SERVICES.**

**No. 115, Sept. Term, 1995.**

Court of Appeals of Maryland.

July 31, 1996.

Reconsideration Denied Aug. 23, 1996.

16

Frederick J. Sullivan, Bowie, for Petitioner.

Sandra Irene Barnes, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Respondent.

Joseph F. Devlin, Glen Burnie, amicus curiae, for C.S.

Joel A. Smith (Joel A. Smith, David Diggs, Christyne L. Neff, Kahn, Smith & Collins, P.A., on brief), Baltimore, amicus curiae, for Federation of Maryland Teachers and Public Employees, AFT, AFL–CIO.

Deborah A. Jeon, Centreville, amicus curiae, for ACLU Foundation of Maryland.

Arthur B. Spitzer, Washington, D.C., amicus curiae, for ACLU Foundation of the National Capital Area.

H. Michael Hickson, Thomas J. Maloney, Charles J. Brown, Banks, Nason, Hickson & Cockey, Salisbury, amicus curiae, for ACLU Foundation of Maryland.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

In this case, we address the procedural mechanisms provided in the Family Law Article applicable to those who have been accused of abusing or neglecting a child.

## I

### A

Maryland Code (1984, 1991 Repl.Vol., 1995 Supp.) §§ 5–701 to 5–715 of the Family Law Article comprise Maryland's statutory procedures for investigating, reporting, and detecting child abuse. These provisions define who must report suspected child abuse and when and how a report must be filed, §§ 5–704 and 5–705, the procedures by which law enforcement and social services agencies must conduct investigations of such reports, § 5–706, and the procedures by which children endangered by child abuse can be protected. §§ 5–709 to 5–713. The statute divides the responsibilities of investigating and reporting on child abuse or neglect among

the State's Department of Human Resources (DHR), the Social Services Administration (SSA) within the DHR, the local departments of social services in each county ("local departments"), and law enforcement agencies. The statute also provides certain protections to a person suspected of child abuse, by limiting the uses to which records and reports can be put and providing certain procedures by which an alleged abuser can challenge the conclusions drawn by an investigating social worker. *See* §§ 5–706.1, 5–706.2, 5–707, 5–714(c), 5–715.

Upon receiving a report of child abuse, § 5–706(a) requires a local department of social services or law enforcement agency to "make a thorough investigation." This investigation includes examining and interviewing the child and his or her caretaker, and requires the department to determine the nature and cause of the abuse. §§ 5–706(b) and (c). Within 10 days after the suspected abuse is first reported, the local department must report its preliminary findings to the local State's Attorney, and it must provide the State's Attorney with a complete written report of its findings within 5 days of the investigation's completion. §§ 5–706(h) and (i).

The local department may make one of three findings when it completes the investigation. If the local department finds that "there is credible evidence, which has not been satisfactorily refuted, that abuse, neglect, or sexual abuse did occur," then it must find that child abuse was "indicated." § 5–701(k); *see also* Code of Maryland Administrative Regulations (COMAR) 07.02.07.12(A) (1996) (providing guidelines for determining when abuse is "indicated"); COMAR 07.02.07.13(A) (providing guidelines for when child neglect is "indicated"). If it finds that "abuse, neglect, or sexual abuse did not occur," then the alleged child abuse has been "ruled out." § 5–701(t); *see also* COMAR 07.02.07.12(C) and 07.02.07.13(C). Finally, if "there is an insufficient amount of evidence to support a finding of indicated or ruled out," the local department may find that the abuse was "unsubstantiated." § 5–701(v); *see also* COMAR 07.02.07.12(B) and 07.02.07.13(B). Following each investigation, the local department must determine which

of these three labels should be applied and document the factors upon which it made its determination. COMAR 07.02.07.11(A).

After it completes its investigation, if it finds that the abuse or neglect was indicated or unsubstantiated, the local department must notify the person allegedly responsible for the abuse or neglect of the department's finding and that the person may request an administrative hearing to appeal the finding. § 5–706.1(a). If an administrative hearing is requested, the local department's records must be reviewed to determine whether its finding should be modified or expunged. § 5–706.1(d).[1] If the finding is not changed to "ruled out" as a result of this review, the department shall forward all of its reports and records to the Office of Administrative Hearings (OAH), the agency that must conduct the hearing. § 5–706.2(b).

---

1. As codified, § 5–706.1(d) is ambiguous as to whether the local department or the DHR must review the record. Throughout the subtitle, the local departments are consistently referred to as "local department" and the DHR is referred to as the "Department." Section 5–706.1(d), however, provides that "the department" shall review the record. The Department of Human Resources, in its regulations, provides that this review will be performed by the local department. COMAR 07.02.26.08. As we discuss below, however, the DHR's regulations improperly apply § 706.1 on a number of points. *See infra*, section II.B. It is possible that this section was intended to refer to "the Department" but was codified incorrectly. § 5–706.1 was enacted by House Bill 617 (1993) and became ch. 318, Laws of Maryland (1993). Because § 706.1 comprised new matter added to existing law, the statutory section was enacted entirely in capital letters. *See* ch. 318, Laws of Maryland at 1858 (1993); *see also* Laws of Maryland at 5 (1993) (describing significance of various type-faces in 1993 legislative enactments). Thus, the word "DEPARTMENT" could have been intended to be either "department" or "Department." In its Fiscal Note for House Bill 617, the General Assembly's Department of Fiscal Services assumed that DHR would conduct the pre-hearing review of the local department's report. The Fiscal Note states that "[t]he Department of Human Resources (DHR) is required to review records and reports concerning a request for an administrative hearing and determine, prior to the hearing, whether an indicated or unsubstantiated finding must be amended, modified, or expunged." We do not resolve this ambiguity at this time, but note its presence so that our discussion in the text is not taken as a resolution of the issue.

Section 5–706.2 defines the procedures under which this hearing must be conducted. For example, § 5–706.2(a) allows the alleged abuser to request that the administrative law judge (ALJ) conduct an *in camera* review of the full report or record to determine its accuracy and sufficiency. Section 5–706.2(c) provides that after the ALJ determines that the information in the report is "sufficient and accurate for purposes of determining an issue in a proceeding," the ALJ may provide the full report or record to the alleged abuser, so long as the ALJ takes measures to protect the confidentiality of the persons who provided the information to the local department. The alleged abuser can submit additional written information to the ALJ, and the ALJ must determine the correctness of the local department's finding based upon the department's report and this additional information. § 706.2(d)(1). If the ALJ determines that the finding is incorrect, the ALJ must order the department to change the finding. § 706.2(d)(2). The hearing and administrative review mechanism provided in §§ 706.1 and 706.2 is commonly referred to as a "Chapter 318 hearing," in reference to the legislative act creating §§ 706.1 and 706.2.

There are several different ways in which information relating to child abuse is stored by the local departments of social services and by the Social Services Administration. First, each local department is required to maintain a case record of all investigations. COMAR 07.02.07.15(A). This paper record includes the written report of the department's findings, copies of medical records, pertinent letters, and any other documentation relating to the investigation. COMAR 07.02.07.15(B). This record is expunged within 120 days of the conclusion of the investigation if abuse or neglect was ruled out and no further reports are received. § 5–707(b)(2); COMAR 07.02.07.18(B). If the alleged abuse or neglect was unsubstantiated, the reports must be expunged within 5 years if no further reports are received. § 5–707(b)(1); COMAR 07.02.07.18(A).

In addition to the local department's report, "[t]he Social Services Administration and each local department may main-

tain a central registry of cases reported [under the child abuse statute]." § 5–714(a). Information stored in such a central registry is at the disposal of the protective services staff of the SSA. § 5–714(c)(1). In addition, the protective services staffs of the local departments and law enforcement personnel have access to the central registry when they are investigating a report of suspected abuse or neglect. § 5–714(c)(2) and (3).

Certain protections are provided to persons suspected of abuse or neglect in relation to central registries. First, before a name can be entered in a central registry, the alleged abuser is entitled to notice. § 5–715(b). In addition, unless the person has already been adjudicated a child abuser, such as in a criminal proceeding, the alleged abuser may request an administrative hearing "for the purpose of allowing the person to appeal the entry of the person's name in the central registry." § 5–715(c)(1). No person's name may be entered into the central registry unless that person has been adjudicated to be a child abuser, or was given the hearing provided for in § 5–715(c) and was unsuccessful, or failed to request a hearing within 15 days of notification by the department seeking to enter the alleged abuser's name in a central registry. § 5–715(d). Once a person's name has been entered in a central registry, it must be removed after seven years if no further entries have been made for that person. § 5–715(e).

In addition to the local department's paper records and state and local central registries, information about suspected child abusers is stored in an "automated master file" or "client information system." The automated master file (AMF) or client information system (CIS) is defined in DHR's regulations as "the automated electronic system that maintains data related to services provided by a local department." COMAR 07.02.07.02(B)(3); COMAR 07.02.07.02(B)(9). The Senate Judicial Proceedings Committee has referred to the AMF as "a statewide, comprehensive database containing records of all cases, including those of suspected child abuse, which are handled by local departments of social services." Senate Judicial Proceedings Committee, Bill Analysis for House Bill 617, at 1 (1993). No statutory provisions refer to the AMF by

name, and DHR has asserted that it is not a "central registry" because it is not "designed solely to list the names of adjudicated child abusers." *Id.* at 2.[2]

## B

On November 26, 1993, the Prince George's County Department of Social Services (PGDSS) notified C.S. that it had conducted an investigation and concluded that C.S. was responsible for an incident of "indicated" abuse, and that it was entering C.S.'s name on the central registry. After C.S. requested a hearing, the PGDSS reviewed its records and declined to modify its finding. After the file was transferred to the Office of Administrative Hearings (OAH), an ALJ conducted an *in camera* review of the documents. C.S. was allowed to submit additional written information to support his position that abuse was not "indicated," and oral argument was presented before the ALJ. The ALJ upheld the local department's decision.

On July 25, 1994, C.S. filed with the Circuit Court for Prince George's County a petition for judicial review and a motion to stay the ALJ's order affirming the PGDSS. The PGDSS moved to dismiss the petition, arguing that judicial review was not provided for in the statute and that the provisions of the Administrative Procedure Act (APA) providing judicial review in some cases do not apply to findings of indicated child abuse. In an opinion and order filed on January 26, 1995, the circuit court (Platt, J.) dismissed the petition on the grounds that the PGDSS was not a state agency and that the APA's provisions granting judicial review in contested cases only apply to actions taken by state agencies.

---

**2.** At least one court has disagreed with this contention and found that the AMF is a central registry under Maryland law. *See Hodge v. Carroll County Dep't of Social Services,* 812 F.Supp. 593, 603 (D.Md.1992) (finding that "any computerized database that includes records of cases of suspected child abuse is a 'central registry' under Maryland law."), *rev'd on other grounds, Hodge v. Jones,* 31 F.3d 157 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 581, 130 L.Ed.2d 496.

C.S. filed an appeal with the Court of Special Appeals and at the same time petitioned this Court for a writ of certiorari. We granted certiorari before the Court of Special Appeals heard arguments in this case.

## C

C.S. contends that the circuit court was incorrect in dismissing his petition and that he is entitled to judicial review of the decision made by the ALJ. First, C.S. notes that he seeks review of the ALJ's order, which constitutes an action taken by the OAH, a state agency. C.S. argues that judicial review of the ALJ's order is appropriate, because the dispute with the PGDSS is a "contested case" within the meaning of the APA and that review is therefore available under that statute. C.S. also contends that his rights to due process under the Maryland and federal constitution will be violated if he is denied judicial review in a case where the state seeks to label him as a child abuser.

The PGDSS concedes that the ALJ's order is an action of a state agency, but contends that the circuit court's decision was correct even if for the wrong reasons. The PGDSS argues that the legislature did not intend Chapter 318 proceedings to be contested cases within the meaning of the APA, and that the APA therefore provides C.S. with no grounds upon which to request judicial review. The PGDSS also asserts that C.S. has no due process right to judicial review in this case.

After reviewing the relevant statutes, the relevant legislative history, and the regulations promulgated under the statutes, we find no need at this time to address whether an alleged abuser can seek judicial review of a Chapter 318 hearing. Instead, we conclude that §§ 5–706.1 and 5–706.2, which implement Chapter 318 hearings, are only applicable to a review of the local department's records. Section 5–715 provides an alleged abuser with a separate and independent right to an administrative hearing before his or her name may be entered into a central registry. We further hold that the hearing under § 5–715 qualifies as a "contested case" hearing

under the APA, and that it was improper to provide C.S. with only the limited hearing specified by Chapter 318. For this reason, we vacate the circuit court's order and remand this case to the circuit court. We shall further direct the circuit court to remand the case to the OAH in order for it to hold a hearing in accordance with this opinion.

## II.

### A

We have repeatedly stated that "[t]he cardinal rule of statutory construction is to ascertain and carry out the true intention of the legislature." *Condon v. State*, 332 Md. 481, 491, 632 A.2d 753 (1993). To discern the legislative intent, we must consider the "general purpose, aim, or policy behind the statute." *Id.* While great weight is given to the plain meaning of the statute's language, *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d 730 (1986), we examine this language in the context in which it was adopted. *Motor Vehicle Admin. v. Mohler*, 318 Md. 219, 225, 567 A.2d 929 (1990). In this light, "[i]t is often necessary to look at the development of a statute to discern legislative intent that may not be as clear upon initial examination of the current language of the statute." *Condon, supra*, 332 Md. at 492, 632 A.2d 753 (citing *Mohler, supra*, 318 Md. at 225–27, 567 A.2d 929). The statute before us embodies thirty years of legislation, in which the legislature has repeatedly balanced the need to report and investigate child abuse with its desire to protect those who have been falsely accused. It is helpful, therefore, to review the history of those provisions relating to the central registries, as well as those provisions restricting the use of information relating to alleged abusers.

By ch. 743, Laws of Maryland (1963), the legislature adopted Maryland Code (1957, 1964 Supp.) Art. 27, § 11A, criminalizing child abuse in Maryland and requiring physicians to report suspected cases of child abuse to the police department. The Legislature amended § 11A in 1966 and expanded it to include reporting to and investigations by local depart-

ments of welfare in addition to criminal enforcement of the law. As amended, the statute provided guidelines for the state and local welfare agencies to follow when investigating child abuse, and gave them authority to take steps to remove the child from the home of an abuser. See ch. 221, Laws of Maryland (1966); Maryland Code (1957, 1967 Repl.Vol.) Art. 27, § 11A. As a part of this expanded role of welfare agencies, the Legislature provided for a central registry of child abuse cases:

> The State Department of Welfare shall maintain a central registry of cases reported under this Act, which data shall be furnished by the respective local welfare boards throughout the State of Maryland and this data shall be at the disposal of public welfare, social agencies, public health agencies, law enforcement agencies, as well as licensed health practitioners and health and education institutions licensed or regulated by the State of Maryland.

Maryland Code (1957, 1967 Repl.Vol.) Art. 27, § 11A(h).

The next significant alteration to this provision was made in 1973, when the Legislature enacted ch. 835.[3] That Act amended the central registry provision, now codified as Art. 27, § 35A(i), to provide that "[t]he State Department of Social Services shall and each local Department of Social Services may maintain a central registry of cases." No alterations were made by this Act to the provision granting access to the central registry to the various organizations and individuals quoted above.

When the legislature next addressed the central registry, it enacted ch. 504, Laws of Maryland (1977), which added a new subsection to Art. 27, § 35A; it provided procedures by which alleged child abusers could attempt to clear their names

---

[3]. Two changes were made to this section between 1966 and 1973. The legislature in 1968 changed the references to the departments of *welfare* throughout the child-abuse statute into references to departments of *social services*. See ch. 702, § 1 Laws of Maryland (1968). In 1970, Art. 27, § 11A was moved to Art. 27, § 35A. Ch. 500, Laws of Maryland (1970).

before the names could be entered on the central registries. Originally codified as Maryland Code (1957, 1976 Repl.Vol., 1978 Supp.) Art. 27, § 35A(j), the subsection provided three new protections for those whose names were to be entered on the registry.[4] First, the statute required the Department of Human Resources to enact regulations to "protect the rights of suspected child abusers." § 35A(j). Second, it required the Department of Human Resources to provide notice to the alleged abuser, and if requested by the alleged abuser, to hold a hearing at which that person could appeal the decision to enter his or her name on the registry. § 35A(j)(1) and (2). The statute specifically forbade the DHR from putting a person's name on the registry unless such an appeal was unsuccessful or was not requested. § 35A(j)(3). Finally, if a person's name was entered on the central registry, the entry would be expunged from the registry after seven years if no further entries were made for that individual and if the

---

4. This enactment provided:
   The Secretary of the Department of Human Resources shall adopt rules and regulations necessary to protect the rights of suspected child abusers. The rules and regulations shall include the following:
   (1) Notice to the suspected child abuser prior to the entry of his name to the child abuse central registry.
   (2) Upon request of the suspected child abuser, the Department of Human Resources shall convene an administrative hearing for the purpose of allowing the suspected child abuser to appeal this entry. This administrative hearing shall be convened in the county of the residence of the suspected child abuser. This paragraph does not apply to those who have been adjudicated a child abuser.
   (3) The Department of Human Resources may not enter into the child abuse central registry the name of any person, unless that person has:
   (a) Been adjudicated a child abuser; or
   (b) Unsuccessfully appealed the entry of his name in the child abuse central registry through procedures established by the department and this Act; or
   (c) Failed to respond within 15 days to notification by the Department of Human Resources of the Department's intent to enter his name in the child abuse central registry.
   (4) Upon the request of a suspected child abuser, the Department of Human Resources shall remove the suspected child abuser's name from the registry, if there has been no entry made for that individual for seven years prior to the date of this request.

individual requested the removal. § 35A(j)(4). Neither the bill nor its legislative history reflect whether § 35A(j) was intended to apply only to the central registry managed by the Department of Human Resources, or whether it was intended to apply to the registries managed by the local departments as well.[5]

In 1981, the legislature shortened the list of individuals and organizations who were eligible to use the information kept in the central registry. Ch. 770, Laws of Maryland (1981) amended Art. 27, § 35A to provide that the data in the central registry "shall be at the disposal of protected services staff of the Social Services Administration, protective services staff of the local departments of social services who are investigating a report of suspected child abuse, and law enforcement personnel who are investigating a report of suspected child abuse." This change limited the uses to which the information in the central registry could be put in two distinct ways. First, even though law enforcement personnel and the local departments of social services still had access to the central registry, such access was now expressly limited to instances where they were investigating a report of suspected child abuse. In addition, while licensed health practitioners and health and education institutions had previously been given access to the central registry, ch. 770 removed any reference to these individuals and organizations.

In 1984, Art. 27, § 35A was moved to the new Family Law Article, and the provisions relating to the central registry were codified as § 5-911 and § 5-912 of that Article. Ch. 296, Laws of Maryland (1984). In 1987, the legislature combined the statutes relating to child abuse and child neglect and recodified the central registry provisions in their present

---

5. The legislative history does reflect the opinion of the Prince George's County Department of Social Services, however. In a letter to the Chairman of the House of Delegates Judiciary Committee, Albert Northrop, the Chairman of PGDSS's Youth Action Committee, stated that "[w]e are strongly in favor of House Bill 997 [enacted as ch. 504] because we feel it extends the necessary protection to the person accused of abuse."

location, §§ 5–714 and 5–715. Ch. 635, Laws of Maryland (1987). In both instances, no substantive changes were made to these sections.

In 1991, the legislature provided additional protection to persons who had been alleged to be abusers, but who had been cleared following an investigation. Ch. 461, Laws of Maryland (1991) limited local departments' ability to retain files in cases where abuse was "ruled out" by requiring the local departments to expunge reports where abuse was ruled out within 120 days of the report. The previous version of § 5–707 had allowed the local departments to retain such reports for up to five years. The 1991 amendments to § 5–707 also added the requirement that local departments expunge all assessments and investigative findings as well as the reports.

The legislature added a new avenue of procedural protection in 1993 when it enacted ch. 318, Laws of Maryland (1993). That bill enacted §§ 5–706.1 and 5–706.2, the provisions allowing alleged abusers to request administrative review of the findings made by a local department. The legislature was prompted to enact these measures by the plight of David and Marsha Hodge, who were denied any review by the DHS and local departments of records held by those departments, even though it had been proven beyond any doubt that no child abuse had occurred. *See* Senate Judicial Proceedings Committee, Floor Report for House Bill 617 (1993); *see generally Hodge v. Carroll County Dep't of Social Services*, 812 F.Supp. 593, 594–600 (D.Md.1992), *rev'd, Hodge v. Jones*, 31 F.3d 157 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 581, 130 L.Ed.2d 496; Patrick J. Kiger, *Abused By the System,* Baltimore Magazine, April 1993, at 49 (discussing in detail the Hodges' circumstances and subsequent federal lawsuit). The DHR and local departments asserted that their records were not "central registries" and that no review was necessary. Floor Report for House Bill 617. After a federal court ordered the agencies to release their records to the Hodges, it was discovered that the records incorrectly stated that sexual abuse was indicated, even though no sexual abuse had ever

been alleged and any physical abuse had been ruled out. Kiger, *supra* at 54–55.

The legislature sought to address this problem by establishing "procedures to allow a person who has been accused of child abuse or neglect access to reports and records concerning the alleged abuse or neglect and allow[ing] the person to request an administrative hearing." Floor Report for House Bill 617, at 1. In its report on House Bill 617, the Senate Judicial Proceedings Committee stated that the legislature intended that the bill provide a remedy *in addition* to the previously existing hearings under § 5–715:

> The bill is intended to more fully protect persons who are wrongly accused of child abuse or neglect ... by creating another mechanism by which they can contest the findings of investigations carried out by local departments of social services. This bill stands apart from the notice and hearing provisions concerning central registries, thereby giving persons a clear and independent basis from which to contest findings of investigations into alleged child abuse and neglect.

Floor Report for House Bill 617, at 2 (1993).[6]

In addition to creating a new hearing procedure, ch. 318 also broadened the scope of § 5–715. Ch. 318 replaced each reference to "the" central registry in § 5–715 with a reference to "a" central registry. Following this amendment, § 5–715's right to a hearing clearly applies to all central registries in Maryland, not one single central registry.

Since 1993, only two minor changes have been made to the relevant statutes. In 1994, § 5–715 was amended to require the DHR to automatically remove the name of a person suspected of abuse or neglect after seven years. The previous version of § 5–715 provided for removal after seven years only upon request of the alleged abuser. *See* ch. 281, Laws of

---

6. Essentially identical language also appears in the Bill Analysis. Senate Judicial Proceedings Committee, Bill Analysis for House Bill 617, at 2 (1993).

Maryland (1994). In 1995, § 5-706.1 was amended to insure that when a Chapter 318 hearing was requested, and the child who was allegedly abused or neglected was the subject of a Child In Need of Assistance petition, the Chapter 318 hearing would be postponed until after the CINA proceedings had been concluded. Ch. 570, Laws of Maryland (1995).

The amendments to Maryland's child abuse laws, and the legislative history behind those amendments, evidence a deep concern on the part of the legislature to give individuals alleged to have committed child abuse or neglect an opportunity to clear their name. This history also demonstrates the legislature's concern that before information relating to alleged child abuse can be disseminated state-wide, that information must have been demonstrated to be accurate either through adjudication or an administrative hearing. Clearly, §§ 5-701 to 5-715 grant broad authority to social services and law enforcement agencies to investigate and prosecute cases of child abuse and to prevent its recurrence. At the same time, the legislature has also shown that this authority must be tempered to ensure that individuals are not labelled as child abusers on the basis of inaccurate or incomplete information.

## B

The hearing procedures codified as §§ 5-706.1 and 5-706.2 are implemented in the DHR's regulations at COMAR 07.02.26. These regulations provide a limited review of the local department's documentation, to ensure the accuracy of the paper record. They do not provide for any type of hearing other than this limited documentary review. At the same time, COMAR 07.02.07.19 implements the DHR's interpretation of §§ 5-714 and 5-715. That regulation provides that all appeals of an agency's decision to enter a person's name on a central registry must be performed in accordance with COMAR 07.02.26. Thus, COMAR 07.02.07.19 limits hearings granted under § 5-715 to the hearing procedures codified as §§ 5-706.1 and 5-706.2.

We hold that COMAR 07.02.07.19 fails to properly implement the legislative scheme because the Chapter 318 hearing was created by the legislature as a new and independent means of review. Thus, Chapter 318 hearings were intended to supplement, rather than replace, the pre-existing administrative review of an agency's decision to enter a person's name on a central registry, available under § 5–715. This conclusion is mandated both by the language of the statute and by the legislative history.

The language used in §§ 5–715 and 5–706.1 demonstrates that two separate review processes have been created. The two sections contain duplicate provisions that would be unnecessary if they referred to a single review process. For example, both sections specify where the hearing will be conducted. *See* § 5–706.1(e); 5–715(c)(2). Also, while §§ 5–706.1 and 5–706.2 specify the procedures by which the Chapter 318 hearing must be held in some detail, § 5–715(d)(2) provides only that its hearing must be conducted "under procedures established by the Department and this section."

The evolution of the child abuse statutes and the legislative history also support this conclusion. Section 5–715 was enacted in 1977, sixteen years before the passage of §§ 5–706.1 and 5–706.2. The legislature in 1977 obviously could not have intended to limit hearings provided under § 5–715 to the procedures of §§ 5–706.1 and 5–706.2, since the 1977 Act contained no such provisions. Unless the legislature in 1993 intended Chapter 318 to supersede § 5–715's pre-existing right to a hearing, the procedures of §§ 5–706.1 and 5–706.2 do not apply to § 5–715.

We have already described Chapter 318's legislative history, which demonstrates that the 1993 enactment of §§ 5–706.1 and 5–706.2 were not intended to affect the pre-existing hearings under § 5–715. As stated in the floor report, Chapter 318 "creat[ed] another mechanism by which [alleged abusers] can contest the findings of investigations carried out by local departments of social services" that "stands apart from the notice and hearing provisions concerning central regis-

tries" and gives them a "clear and independent basis from which to contest findings of investigations into alleged child abuse and neglect." Senate Judicial Proceedings Committee, Floor Report for House Bill 617, at 2 (1993). We conclude therefore, that the statute contains no requirement that the procedures under § 5–715 be conducted in accordance with §§ 5–706.1 and 5–706.2.

### III

Having determined that the legislature did not intend for the hearing provided in §§ 5–706.1 and 5–706.2 to supplant the hearing required by § 5–715, we must determine the nature of the hearing to which C.S. is entitled under § 5–715. Here, we focus upon whether § 5–715 provides a "contested case" hearing as defined by Maryland's Administrative Procedure Act, Maryland Code (1984, 1995 Repl.Vol.) §§ 10–201 through 10–217 of the State Government Article. We make this determination because "[u]nder the terms of the APA, when a proceeding meets the definition of a 'contested case,' the agency is required to provide certain trial type procedures during the course of the proceeding." *Sugarloaf v. Waste Disposal*, 323 Md. 641, 651, 594 A.2d 1115 (1991). Thus, if § 5–715 provides a contested case hearing, the DHR cannot limit a hearing under that section to the procedures specified in §§ 5–706.1 and 5–706.2.

Section 10–202(d)(1) of the APA defines a "contested case" to include proceedings before an agency that determine "a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing." One of the key elements of a contested case hearing is whether the entity conducting the hearing acts in an adjudicatory capacity, *i.e.* by determining the facts of a case and applying those facts to some legal standard in order to reach a conclusion. *See Sugarloaf, supra*, 323 Md. at 653, 594 A.2d 1115 (finding that where a hearing was merely "preliminary," it was not a contested case hearing); *Medical Waste v. Maryland Waste*, 327 Md. 596, 612 A.2d 241 (finding that a hearing as to

whether a permit should be granted was adjudicatory rather than legislative) (1992).

█ The hearing provided by § 5–715 falls within the definition of a contested case. Section 5–715(c) provides the right to a hearing, and § 5–715(d) provides that a person's name may not be entered on a central registry unless their appeal at the hearing is unsuccessful or the hearing is not requested. The sole question at a hearing under § 5–715 must necessarily be whether the alleged incident of abuse or neglect is correctly labelled as "indicated" or "unsubstantiated." In determining this issue, the ALJ must sift between potentially conflicting information presented by the DHR and the alleged abuser to determine whether there are sufficient facts to meet the definitions of the two categories provided in § 5–701(k) and (v). We conclude that the legislature has provided a right not to have one's name on the central registry unless it is determined in an administrative hearing that child abuse was indicated or unsubstantiated.[7]

█ Since § 5–715 provides a right to a contested case hearing, the DHR cannot limit a hearing under that section to the procedures of a Chapter 318 hearing. It is true that "the statute or regulation which grants the right to a hearing may negate the fact that the hearing is to be a 'contested case' or 'adjudicatory hearing.'" *Sugarloaf, supra,* 323 Md. at 653, 594 A.2d 1115. The statute providing for the hearing, however, "should not be construed to override the definition in the Administrative Procedure Act unless [it] does so expressly or by clear implication." *Id.* at 666 n. 6, 594 A.2d 1115. We find no such implication in § 5–715.

It is true that § 5–715 requires that the hearings be held "under procedures established by the Department and this section." The mere fact, however, that the Department may establish some procedures relating to the hearing is not sufficient by itself to override the APA's definition of a

---

7. The statute provides an exception for cases where one has already been adjudicated to have abused or neglected a child.

"contested case." We therefore hold that § 5–715 entitles C.S. to a contested case hearing before the DHR or PGDSS can enter his name on a central registry created under § 5–714.[8]

*ORDER OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO THE OFFICE OF ADMINISTRATIVE HEARINGS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO ABIDE THE RESULT.*

---

8. Because C.S. seeks review of PGDSS's decision to enter C.S.'s name on a "central registry," we need not address the issues of whether judicial review is available of a Chapter 318 hearing, or whether such a hearing is a "contested case." We similarly do not address the question of whether records stored in the AMF are a "central registry" within the meaning of § 5–714.