957 A.2d 620

**Amir TABASSI**

v.

**CARROLL COUNTY DEPARTMENT OF SOCIAL SERVICES.**

No. 00630, Sept. Term, 2007.

Court of Special Appeals of Maryland.

Oct. 1, 2008.

Amir Tabassi, Germantown, for Appellant.

Sandra Barnes (Douglas F. Gansler, Atty. Gen., on brief), for Appellee.

Panel: RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JAMES A. KENNEY, III, (Retired, Specially Assigned),* ADKINS, SALLY D., JJ.

ADKINS, J.

Amir Tabassi appeals an Office of Administrative Hearings (OAH) dismissal of his request for a contested case hearing to challenge a finding by the Carroll County Department of Social Services (DSS), appellee, that he was responsible for "indicated child neglect." The OAH dismissed Tabassi's hearing request after Tabassi was found guilty of reckless endangerment and child access to firearms, criminal charges that arose out of the same incident that was the basis for the OAH's finding of "indicated child neglect." Md.Code (1984, 2006 Repl.Vol.) § 5–706.1(b)(3) of the Family Law Article (FL) requires the OAH to dismiss an administrative appeal of a

---

* Adkins, Sally D., J., now serving on the Court of Appeals, participated in the hearing and conference of this case while an active member of this Court; she participated in the adoption of this opinion as a specially assigned member of this Court.

DSS finding "[i]f after final disposition of the criminal charge, the individual requesting the hearing is found guilty of any criminal charge arising out of the alleged abuse or neglect[.]" In appealing the dismissal, Tabassi presents the following two questions for our review:

I.   Did the lower court err in:

Affirming the Office of Administrative Hearings' ... decision [a]nd refusing to reverse the [administrative] law judge's dismissal order?

II.   Is the regulation and the statute:

● Unconstitutional?

● Contrary to the [a]gency's [s]tatutory [a]uthority or [j]urisdiction?

● Resulted [sic] from an unlawful procedure?

● Arbitrary or capricious?

We conclude that the OAH erred in dismissing Tabassi's administrative appeal under FL § 5–706.1(b)(3) based on Tabassi's conviction for reckless endangerment and child access to firearms in the related criminal proceeding. Tabassi's guilt on these criminal charges did not require proof that he was a "person who has permanent or temporary care or custody or responsibility for supervision of the child[,]" a necessary element of "neglect" under FL § 5–701(s). Tabassi's criminal charges, therefore, did not arise "out of the alleged abuse or neglect" in a manner that warranted dismissal of his administrative appeal under FL § 5–706.1(b)(3). Because we remand on issue I, we do not reach issue II.

## FACTS AND LEGAL PROCEEDINGS

In December 2003, the Carroll County Department of Social Services sent Amir Tabassi, the appellant *pro se*, a "notice of action" stating that it found Tabassi responsible for "indicated child neglect." DSS conducted an investigation of Tabassi upon having received information that officers of the Bureau of Alcohol, Tobacco, Firearms and Explosives, while executing a search warrant for illegal firearms at Tabassi's home, found a 12–year–old unrelated girl living at the home and "allegedly

sleeping in Mr. Tabassi's bed." A DSS worker went to Tabassi's residence, which was being searched, and observed "various weapons" being taken from the home. The worker first encountered a 29–year–old woman, named Vera, sitting on the front porch who stated that she was the sister of the 12–year–old girl inside the residence and that the two had been staying with Tabassi.

The DSS worker was then informed by troopers searching the home that the 12–year–old, named Simone, was found sleeping in Tabassi's bed with loaded firearms on and next to the bed. The DSS worker spoke with Simone and elicited the following information, documented in the DSS investigation report:

[Simone] stated that she lives at [redacted] with her parents Mary and George [redacted]. She is a student at [redacted]. Simone stated that her sister and Mr. Tabassi met through a friend and that Vera had helped watch Tabassi's two small children when they visited from Tennessee. Simone had come with her sister from Ohio for the summer. Simone stated that she does not normally sleep in Mr. Tabassi's room. Simone denied that she had ever slept in Mr. Tabassi's bed when he was in the bed....

Simone stated that the night before, they had gone to the airport and returned about 1 am. She laid down in the bedroom that Mr. Tabassi's children sleep in when they are there. She could not sleep and got up around 2–3 am and got on the computer in the kitchen. After a while she went and laid down in the living room on the sofa. At approximately 5–6 am Mr. Tabassi got up to go to work. He came out to the living room and told her she could go sleep in his bed. Simone stated that she did so and that there were two loaded guns on the bed with her when she went to sleep. She stated that there were also numerous loaded guns by the bed on the floor and a machine gun. Simone stated that she knew that there were guns in the top dresser drawer and that guns are on a regular basis out in the open.

The DSS worker contacted the mother of the two girls and the mother stated that Vera had met Tabassi on the internet,

that Tabassi told Vera that he wanted to marry her, and requested that she come to Maryland. The girls' parents then allowed Simone to come with Vera for the summer because they trusted Vera's judgment. The DSS worker spoke with Tabassi, who denied that there were any loaded guns left out in the open until the day before the search and that they were always locked up in a safe or cabinet.

Tabassi filed a request for a contested case hearing with the Office of Administrative Hearings on March 1, 2004.[1] The OAH dismissed this request as untimely and Tabassi appealed the dismissal. On November 21, 2005, we vacated the judgment and remanded the case to the OAH for further proceedings. The OAH, on remand, stayed the proceedings concerning Tabassi's requested contested case hearing, pursuant to FL § 5–706. 1(b)(3)(i), because it had "been advised of criminal proceedings pending[,] arising out of the alleged abuse or neglect appealed in the [OAH] matter[.]"

On April 26, 2006, DSS filed a Motion to Dismiss Tabassi's appeal "based on [his] being found guilty of reckless endangerment and firearms-access by minors, criminal charges arising out of the alleged neglect, on August 31, 2004[.]" Tabassi filed an opposition to DSS's motion to dismiss on May 11, 2006. The OAH dismissed Tabassi's appeal on May 11, 2006, pursuant to FL § 5–706.1(b)(3)(ii). Tabassi sought judicial review of the OAH's dismissal in the Circuit Court for Carroll County, and on May 3, 2007, the court affirmed the OAH's order of dismissal.

## DISCUSSION

### Standard Of Review

"When reviewing an administrative agency decision, our role 'is precisely the same as that of the circuit court.' "

---

1. Individuals found responsible for indicated abuse or neglect may request a contested case hearing in the Office of Administrative Hearings to appeal the finding. See Md.Code (2006 Repl.Vol., 2007 Supp.) § 5–706.1 of the Family Law Article (FL).

*Howard County Dep't of Soc. Servs. v. Linda J.,* 161 Md.App. 402, 407, 869 A.2d 404 (2005) (citation omitted). We review only the decision of the administrative agency and do not evaluate the factual findings and conclusions of law made by the circuit court. *See id.* We apply a limited standard of review and will not disturb an administrative decision on appeal "if substantial evidence supports factual findings and no error of law exists." *See Howard County v. Davidsonville Area Civic and Potomac River Ass'ns, Inc.,* 72 Md.App. 19, 34, 527 A.2d 772, *cert. denied,* 311 Md. 286, 533 A.2d 1308 (1987). "[I]f the issue before the administrative body is 'fairly debatable', that is, that its determination involved testimony from which a reasonable man could come to different conclusions, the courts will not substitute their judgment for that of the administrative body." *Eger v. Stone,* 253 Md. 533, 542, 253 A.2d 372 (1969). We are under no constraint, however, " 'to affirm an agency decision premised solely upon an erroneous conclusion of law.' " *See Berkshire Life Ins. Co. v. Md. Ins. Admin.,* 142 Md.App. 628, 653, 791 A.2d 942 (2002) (citation omitted).

## The OAH's Dismissal Of Tabassi's Appeal

■ Tabassi argues that the OAH erred in dismissing his appeal of DSS's finding Tabassi responsible for indicated child neglect. The OAH relied on FL § 5–706.1(b)(3) and Tabassi's guilt for the offenses of reckless endangerment and child access to firearms in dismissing his appeal. The pertinent provisions of FL § 5–706.1(b) provide as follows:

(b) In the case of a finding of indicated abuse or neglect, an individual may request a contested case hearing to appeal the finding in accordance with Title 10, Subtitle 2 of the State Government Article by responding to the notice of the local department in writing within 60 days....

(3)(i) If a criminal proceeding is pending on charges arising out of the alleged abuse or neglect, the Office of Administrative Hearings shall stay the hearing until a final disposition is made.

(ii) If after final disposition of the criminal charge, the individual requesting the hearing is found guilty of any criminal charge arising out of the alleged abuse or neglect, the Office of Administrative Hearings shall dismiss the administrative appeal.

Tabassi argues, first, that the OAH could not conclude from the mere criminal docket entries that the issue of neglect had been adjudicated in his criminal case. Tabassi contends, second, that the OAH, in dismissing his appeal, deprived him of the opportunity to challenge DSS's finding of neglect in a matter that contravened the legislative intent of FL § 5–701.1. In support of his position, Tabassi cites *Montgomery County Dep't of Soc. Servs. v. L.D.*, 349 Md. 239, 707 A.2d 1331 (1998), in which the Court of Appeals considered the procedural protections the legislature has afforded individuals accused of child abuse or neglect.

In *L.D.*, the Court concluded that individuals accused of child abuse or neglect were entitled to a "full contested case hearing" before their names were entered into databases accessible on a statewide basis. *See id.* at 275, 707 A.2d 1331. The Court based this conclusion on an analysis of FL § 5–715, a statute that was repealed in 1999, and its opinion in *C.S. v. Prince George's County Dep't of Soc. Servs.*, 343 Md. 14, 680 A.2d 470 (1996). The Court rejected an argument that a full hearing right to the accused would hinder local departments of social services from entering information into databases and that this would cripple their ability to protect children from abuse and neglect:

We believe the Legislature has spoken on this issue, and it is clear it sought a balance between the critical need to investigate and prosecute child abusers and neglectors and the equally critical need to allow persons accused of abuse and neglect the opportunity to clear their names before dissemination throughout the entire state.

*See id.* at 275, 680 A.2d 470.

Tabassi argues, in light of the recognized legislative intent in *L.D.*, that he was entitled to a hearing before the OAH to

have the opportunity to clear his name of the accusation of child neglect, because DSS's claim of neglect was not adjudicated in his criminal case. Tabassi claims support for this proposition from the following Court of Appeals discussion of the legislative history behind FL §§ 5–706.1, 5–706.2, and 5–715, by which the legislature created a new hearing procedure and broadened the scope of registries subject to procedural requirements:

> This history ... demonstrates the legislature's concern that before information relating to alleged child abuse can be disseminated state-wide, that information must have been demonstrated to be accurate either through adjudication or an administrative hearing. Clearly, §§ 5–701 to 5–715 grant broad authority to social services and law enforcement agencies to investigate and prosecute cases of child abuse and to prevent its recurrence. At the same time, the legislature has also shown that this authority must be tempered to ensure that individuals are not labelled [sic] as child abusers on the basis of inaccurate or incomplete information.

*See C.S.*, 343 Md. at 28–30, 680 A.2d 470.[2]

Tabassi maintains, third, that his criminal charges did not arise out of the alleged child neglect and that his guilt for

---

**2.** Former Md.Code (1984, 1991 Repl.Vol., 1995 Supp.) § 5–706.2 of the Family Law Article (FL) defined the administrative review procedures the OAH was required to follow if a local department declined to change its finding on abuse or neglect after having engaged in an initial requested review of its own records. The OAH, under FL § 5–706.2, was instructed to conduct an *in camera* review of the full departmental report or record to determine its accuracy. *See C.S. v. Prince George's County Dep't of Soc. Servs.*, 343 Md. 14, 19–20, 680 A.2d 470 (1996). FL § 5–706.2 was repealed in 1999 as part of the legislature's effort to streamline the hearing procedures for those accused of child abuse or neglect by eliminating a record review process and replacing it with a two-tiered appeal process under FL § 5–706.1. *See* 1999 Md. Laws, ch. 214; Fiscal Note for H.B. 148 (1999).

The legislature also repealed FL § 5–715, *see* 1999 Md. Laws, ch. 214, a provision which had provided "an alleged abuser with a separate and independent right to an administrative hearing before his or her name may be entered into a central registry." *See C.S.*, 343 Md. at 23,

these charges, therefore, did not warrant dismissal under FL § 5–706.1(b)(3)(ii). Tabassi contends that this provision is applicable only if the elements of the crime for which an individual is charged include the charge of neglect or abuse as defined under the Family Law Article. Tabassi argues that his criminal charges did not arise out of the alleged child neglect, because his criminal charges did not prove, *inter alia,* that he was a caretaker for the child.

DSS responds that the OAH properly dismissed Tabassi's appeal request on the basis that he was found guilty of reckless endangerment and child access to firearms, charges arising out of the alleged child neglect. DSS argues the elements of FL § 5–706. 1(b)(3)(ii) were satisfied because the endangerment for which Tabassi was found guilty was the same endangerment that was the basis for DSS's finding of neglect, *i.e.* that Tabassi failed to provide Simone with proper care and attention and, thus, exposed her to a substantial risk of harm.

DSS rejects the contention that FL § 5–706. 1(b)(3)(ii) required OAH to determine whether the crimes of which Tabassi was found guilty contained the same elements as "indicated child neglect." According to DSS, "[s]uch an interpretation ... is inconsistent with the statute's reference to the preclusive effect of a finding of guilt on 'any criminal charge arising out of the alleged abuse or neglect.'" DSS argues, moreover, that such a requirement would render the reference to "neglect" in FL 5–706.1(b)(3) nugatory as there is no crime called, or with the same elements as, child neglect.

DSS contends that the more reasonable construction of the statute is the one adopted by the OAH and circuit court: Tabassi was not entitled to a contested case hearing because he was found guilty of criminal charges that "stemmed from the same incident that gave rise to DSS's finding of indicated abuse or neglect." DSS maintains that this interpretation is

680 A.2d 470. The FL § 5–715 right to a contested case hearing was incorporated in FL § 5–706.1, creating a two-tiered appeal process.

supported by *Linda J.*, 161 Md.App. at 409–11, 869 A.2d 404, in which we concluded that the OAH properly dismissed a request for a contested case hearing to challenge alleged child abuse pursuant to FL § 5–706. 1(b)(3)(ii) after a foster parent pleaded guilty to second degree assault and received probation before judgment. Second degree assault, unlike the definition of child abuse in the Family Law Article, contains no requirement that the perpetrator have a special relationship with the victim or that the victim be a child.

Our decision in *Linda J.* is not dispositive on the question of whether the OAH properly dismissed Tabassi's appeal under FL § 5–706. 1(b)(3)(ii). We summarized the issue in *Linda J.* as follows:

> [T]o deny Linda J.'s request for a hearing, appellant must show two things: first, that Linda J.'s criminal charges arose out of her alleged abuse of her foster daughter and, second, that Linda J. was "found guilty" of those charges. Since there is no dispute that the charges at issue arose out of Ms. J.'s alleged abuse of her foster daughter, we are left only with the question of whether she was "found guilty" of those charges.

*See id.* at 409, 869 A.2d 404. The propriety of the OAH's dismissal of Tabassi's appeal, unlike the dismissal in *Linda J.*, turns on whether Tabassi's criminal charges arose out of the alleged neglect in a manner that obviates the need for a contested case hearing, and not on whether he was "found guilty" of his charges. We conclude, for the reasons that follow, that Tabassi's criminal proceeding and resulting guilt for reckless endangerment and child access to firearms did not establish the accuracy of all the information necessary to support DSS's finding of Tabassi's having engaged in child neglect, obviating the need for a contested case hearing. *See C.S.*, 343 Md. at 30, 680 A.2d 470. Tabassi's appeal was, therefore, improperly dismissed pursuant to FL § 5–706. 1(b)(3)(ii).

The cardinal rule of statutory construction is to "ascertain and carry out the real legislative intention." *See Baltimore*

*Gas & Elec. Co. v. Bd. of County Comm'rs of Calvert County,*
278 Md. 26, 31, 358 A.2d 241 (1976). "In determining that
intention, we consider the language of an enactment in its
natural and ordinary signification; only when the statute in
question is ambiguous or of doubtful meaning need we look
elsewhere to ascertain the legislative intention." *Id.* We,
therefore, "look to the normal, plain meaning of the lan-
guage[,]" and if "that language is clear and unambiguous, we
need not look beyond the provision's terms to inform our
analysis[.]" *See City of Frederick v. Pickett,* 392 Md. 411, 427,
897 A.2d 228 (2006).

"When the provision is part of a statutory scheme, [we] will
interpret it in the context, as one element of a whole, so as to
harmonize and reconcile the statutory provisions." *Mohan v.
Norris,* 158 Md.App. 45, 57, 854 A.2d 259, *aff'd,* 386 Md. 63,
871 A.2d 575 (2005). "[W]here the meaning of the plain
language of the statute, or the language itself, is unclear, 'we
seek to discern legislative intent from surrounding circum-
stances, such as legislative history, prior case law, and the
purposes upon which the statutory framework was based.'"
*Webster v. State,* 359 Md. 465, 480, 754 A.2d 1004 (2000)
(citation omitted).

FL § 5–706.1 is the result of a legislative effort to alter the
administrative appeals process for individuals suspected of
child abuse or neglect in the wake of the Court of Appeals'
decision in *C.S.,* 343 Md. at 30–34, 680 A.2d 470. *See* Fiscal
Note for H.B. 148 (1999). The *C.S.* Court held that alleged
abusers had an independent right to a contested case hearing
before his or her name could be entered into a central
registry. *See C.S.,* 343 Md. at 23–24, 680 A.2d 470. The
Court concluded that a more limited record review procedure,
contained in a provision allowing alleged abusers to request
administrative review of the findings made by a local social
services department, was insufficient. *See id.* The Court
explained what must be addressed at the contested case
hearing:

> The sole question at a hearing ... must necessarily be
> whether the alleged incident of abuse or neglect is correctly

indicated as "indicated" or "unsubstantiated." In determining this issue, the ALJ must sift between potentially conflicting information presented by the [Department of Human Resources] and the alleged abuser to determine whether there are sufficient facts to meet the definitions provided in [FL § 5–701(m) and (y) ].

*Id.* at 33, 680 A.2d 470.

The legislature's alteration to the administrative appeals process following *C.S.* did not, in any way, diminish the procedural protections for individuals accused of abuse or neglect, but merely streamlined the appeals process in a manner that preserved an individual's right to a contested case hearing when accused of abuse or neglect. *See* Fiscal Note for H.B. 148 (1999)(stating that the legislation "is intended to streamline the hearing procedures by providing for one procedure (contested case hearing) for a finding of indicated and another procedure (conference with a local department of social services) for a finding of unsubstantiated and by eliminating record review process"). The legislature, by enacting FL § 5–706.1 and streamlining the appeals process, did not abandon its concern, as stated in *C.S.*, "that before information relating to alleged child abuse [or neglect] can be disseminated state-wide, that information must have been demonstrated to be accurate either through adjudication or an administrative hearing." *See C.S.*, 343 Md. at 30, 680 A.2d 470.

Tabassi's guilt for reckless endangerment and child access to firearms did not remove his right to have DSS's finding of neglect reviewed by the OAH under FL § 5–706. 1(b)(3)(ii). Neglect is defined as

the leaving of a child unattended or other failure to give proper care and attention to a child *by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child* under circumstances that indicate: (1) that the child's health or welfare is harmed or placed at substantial risk of harm[.]

*See* FL § 5–701(s)(emphasis added). Tabassi's guilt for reckless endangerment and child access to firearms did not require

proof that Tabassi was a parent of, caretaker for, custodian of, or responsible for Simone.[3] His guilt for these offenses, therefore, did not obviate the need for an opportunity to appeal DSS's finding of neglect such that dismissal was warranted under FL § 5–706.1. An individual's status to a child is an element of a finding of neglect, and since this status was not adjudicated in his criminal proceeding, Tabassi was entitled to a hearing to ensure that DSS's information, supporting its neglect finding, was demonstrated to be accurate.

We believe that a reasonable interpretation of FL § 5–706.1(b)(3) is that dismissal of an alleged abuser or neglector's administrative appeal is warranted where an accused is found guilty of criminal charges stemming from the same conduct that serves as the basis for a finding of abuse or neglect and the requisite status of the individual to the child has been adjudicated or is not disputed. But Tabassi insists that he was not a caretaker of or responsible for Simone when he engaged in conduct for which he was found guilty of reckless endangerment and child's access to firearms. He should have the opportunity to challenge DSS's finding regarding his status before he is found and listed as responsible for indicated child neglect in a central registry.

**JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY VACATED. CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTIONS TO REVERSE THE ADMINISTRATIVE DECISION AND REMAND THE CASE TO THE OFFICE OF ADMINISTRATIVE HEARINGS FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY APPELLEE.**

---

**3.** Tabassi's guilt for reckless endangerment merely required proof that he recklessly engaged in conduct creating a substantial risk of death or serious physical injury to another. *See* Md.Code (2002, 2007 Supp.) § 3–204 of the Criminal Law Article (CL). His guilt for providing a child's access to firearms, moreover, only required proof that he stored or left a loaded firearm in a location where he knew or should have known that an unsupervised child, *i.e.* an individual under the age of 16, would gain access to the firearm. *See* CL § 4–104.